**James D. HODGSON, Secretary of Labor, United States Department of Labor, Plaintiff,**

**v.**

**LOCAL 734, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Defendant.**

No. 70 C 1803.

United States District Court,
N. D. Illinois, E. D.

Jan. 24, 1972.

James R. Thompson, U. S. Atty., Matt P. Cushner and Sheldon Waxman, Asst. U. S. Attys., Herman Grant, Regional Sol., Dept. of Labor, George Faris, Dept. of Labor, Chicago, Ill., for plaintiff.

Sherman Carmell, Carmell & Charone, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

The defendant's motion for summary judgment or partial summary judgment raises several questions concerning the requirements of §§ 401 and 402 of the Labor Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. §§ 481, 482, that a union member exhaust all internal union remedies before the Secretary of Labor may consider his complaint that the provisions of the Act relating to union elections have been violated. The defendant contends that certain issues asserted in the Secretary's complaint in this suit seeking to set aside the challenged election were not raised before the union, that, as to is-

sues that the member did raise before the union, those issues were not presented in a manner which may be deemed to be utilization of union remedies and that, in any event, the Secretary has failed to prove that any of the alleged election irregularities affected the outcome of the election. After a review of the applicable legal principles and the factual assertions of the parties in the context of this motion, we conclude that the defendant's motion for summary judgment or partial summary judgment must be denied.

The contested election for officers of the defendant (hereinafter referred to as "Local 734") was held on December 20, 1969, and was conducted by representatives of Teamsters Joint Council No. 25, a central labor body composed of Teamster Union affiliates in the area comprising northern Illinois and extreme northwestern Indiana. On December 17, 1969, three days prior to the election, the unsuccessful candidates for office, who later became the protestants, sent a letter to the incumbent president of Local 734 who was running for and won reelection suggesting certain procedures for the upcoming election which the writers believed would insure a fair election. This letter was not received by the defendant until December 22, 1969, two days after the election.

During the course of the December 20 election, observers for the protestants handed an election official a document dated that day and titled "Protest." On December 21, 1969, the protestants sent the defendant a letter which incorporated the complaints contained in the December 20 protest and added several other claimed violations. For the purposes of this motion for summary judgment, all parties consider the December 20 protest and the December 21 letter as a unitary protest. When the defendant received the December 21 protest, it informed the protestants that a meeting of the union's executive board would be held in January to act upon the protest.

The only members who came to that meeting were Daniel Alexander and Joseph Senn, who had unsuccessfully run for the offices of Secretary-Treasurer and President, respectively. Senn read a prepared statement of position on behalf of himself and the other defeated candidates. The president of Local 734 asked them to present evidence to substantiate the charges contained in their protest letters of December 20 and 21. They responded to the effect that the evidence in support of the other charges was contained in the protests of the observers handed to the election officials during the election which were in the hands of the union. The defendant's executive board, basing its decision on the failure of the protestants to present evidence in support of their charges of irregularities, notified the protestants by letter dated February 3, 1970 that their protests had been denied.

On February 6, 1970, the protestants perfected an appeal of the adverse decision of Local 734 to Teamsters Joint Council No. 25. The protestants were informed by letter dated February 23, 1970 that a hearing before the Joint Council executive board would be held on March 9, 1970. At that hearing, Senn appeared on behalf of all the defeated candidates and again read a prepared statement and said that he would stand on the written charges alone. On March 25, 1970, more than three months subsequent to the original filing of the protest over the election and prior to any final union decision, the protestants filed a complaint with the Secretary of Labor. On April 6, 1970, Joint Council No. 25 gave its final decision by ruling adversely to the protestants.

The defendant urges that certain aspects of the Secretary's complaint in this action are improperly included because the protestants failed to exhaust their union remedies as to those claims. It asserts that no notice was ever given to it about certain of the alleged irregularities upon which the Secretary is partially basing his attempt to set aside the election and that the law is now clear that the Secretary may not so act.

Section 402(a) of the LMRDA authorizes a union member "who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body" to file a complaint with the Secretary alleging a violation of Section 401 of the LMRDA, which mandates certain union election procedures designed to insure fair union elections. Because the Supreme Court has twice considered this exhaustion provision, certain guidelines exist to aid the Court in the resolution of the issues before it.

In Wirtz v. Local Union Number 125, Laborers' International Union of North America, AFL–CIO, 389 U.S. 477, 88 S.Ct. 639, 19 L.Ed.2d 716 (1968) (hereinafter referred to as *"Laborers Union"*), the Secretary had filed a complaint challenging the validity both of a general election of all local officers and of a subsequent runoff election necessitated by a tie vote for one office in the general election. The complaining union member had challenged internally only the validity of the runoff election, alleging that members not in good standing had been allowed to vote in the election because of the practice of the local's secretary-treasurer of paying from local funds delinquent union dues of selected members. Under the local's constitution, failure to pay union dues resulted in the loss of all membership rights, one of which was the right to vote in local elections. Upon investigation, the Secretary discovered that, because of this practice, ineligible members had voted both in the runoff and in the general election, and that 16 of the 27 candidates in the general election had been improperly deemed eligible to run for the same reason.

The Court held that the Secretary properly could challenge the general election as well as the runoff election because the union "had fair notice from the violation charged by [the complaining member] in his protest of the runoff election that the same unlawful conduct probably occurred at the earlier election as well." 389 U.S. at 481, 88

S.Ct. at 641. Analysis of the statutory language and the legislative history convinced the Court that it would be "anomalous to limit the reach of the Secretary's cause of action by the specifics of the union member's complaint," 389 U.S. at 483, 88 S.Ct. at 642. The dual objectives of fostering union self-government and insuring fair union elections were seen by the Court to be "furthered by permitting the Secretary to include in his complaint at least any § 401 violation he has discovered which the union had a fair opportunity to consider and redress in connection with a member's initial complaint." 389 U.S. at 484, 88 S.Ct. at 643. The Court further stated, ". . . Congress, having given the Secretary a broad investigative power, cannot have intended that his right to relief be defined by a complaining member's ignorance of the law or the facts or by the artlessness of the member's protest." 389 U.S. at 485, 88 S.Ct. at 643. Because the Court concluded that the union had had fair notice of the challenge to the general election, it declined to rule on the issue of whether a member's protest triggers a § 402 enforcement action in which the Secretary would be permitted to file suit challenging any violation of § 401 discovered in his investigation of the member's complaint irrespective of whether or not it had been protested internally. 389 U.S. at 481–482, 88 S.Ct. at 639.

In Hodgson v. Local Union 6799, United Steelworkers of America, AFL–CIO, 403 U.S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971) (hereinafter referred to as *"Local 6799"*), the union member had filed an internal protest concerning election irregularities but did not challenge a meeting attendance rule regarding eligibility for holding office. Faced with an adverse union ruling, the member complained to the Secretary. After conducting an authorized investigation, the Secretary filed suit against the union challenging the election on the grounds of improper use of union facilities, the irregularity internally protested, and of imposition of unreasonable

eligibility requirements. The latter ground included a challenge both to the claimed non-uniform application of the meeting-attendance rule and to the validity of the rule itself. The Court, in rejecting the Secretary's contention that Section 402 of the LMRDA authorized him to investigate and litigate all violations that may have affected an election once a member exhausted his internal remedies concerning any violation that occurred, held that the member's failure to object to the attendance rule during pursuit of his internal union remedies, of which he had clear knowledge at that time, barred the Secretary from later challenging that rule in a § 402(b) action. In holding that knowledge upon the part of the union member at the time of the protest of other irregularities or potential challenges to an election prevents the Secretary from litigating any § 401 violations other than those protested, the Court recognized that union members might not always have full knowledge of violations at the time that they recognized and asserted other violations. The Court stated:

. . . To accept [the Secretary's] contention that a union member, who is aware of the facts underlying an alleged violation, need not first protest this violation to his union before complaining to the Secretary would be needlessly to weaken union self-government. Plainly [the Secretary's] approach slights the interest in protecting union self-regulation and is out of harmony with the congressional purpose reflected in § 402(a).

Of course, any interpretation of the exhaustion requirement must reflect the needs of rank and file union members—those people the requirement is designed ultimately to serve. We are not unmindful that union members may use broad or imprecise language in framing their internal union protests and that members will often lack the necessary information to be aware of the existence or scope of many election violations. Union democracy is far too important to permit these de-

ficiencies to foreclose relief from election violations; and in determining whether the exhaustion requirement of § 402(a) has been satisfied, courts should impose a heavy burden on the union to show that it could not in any way discern that a member was complaining of the violation in question. But when a union member is aware of the facts supporting an alleged election violation, the member must, in some discernible fashion, indicate to his Union his dissatisfaction with those facts if he is to meet the exhaustion requirement. 403 U.S. at 340–341, 91 S.Ct. at 1846.

██ From the decisions in *Laborers Union* and *Local 6799* the following guidelines regarding the exhaustion requirement of § 402 of the LMRDA may be drawn. If a union member has internally protested an alleged election irregularity, the Secretary is authorized to litigate such issue. If the member had knowledge of an alleged § 401 violation and does not give the union "fair notice" of his complaint, the Secretary may not litigate such contention. Finally, if the member presented an inartfully drawn protest to the union which can be said to cover several violations, the Secretary may litigate other claims arguably covered by the protest when the union can be charged with knowledge thereof under the heavy duty placed upon it by *Local 6799* to discern all various violations that a member might be asserting.

We now turn to the application of the above principles to the facts involved in this litigation. One aspect of the alleged deficiencies in the election which the Secretary seeks to prove is that the observers for the losing candidates were neither permitted to record the names of voters nor to challenge the eligibility of prospective voters. The defendant moves for summary judgment on this issue contending that the protestants did not give the union adequate notice of these deficiencies, that no requirement exists in the LMRDA for such recordation or challenge procedures, and that the Sec-

retary has not proved that these violations may have affected the outcome of the election.

■■ As to the legal issue, we agree with the defendant that no specific requirement exists in § 401 of the Act for recordation and challenge procedures. Section 401(c) does require, however, that "adequate safeguards to insure a fair election shall be provided, including the right of any candidate to have an observer at the polls and at the counting of the ballots." The Secretary contends that, in the total circumstances of the election, the failure to allow the observers to record the names and to challenge the eligibility of voters was a failure to provide the statutorily required, but undefined, safeguards. Whether or not this failure of the union to have these procedures may be deemed in the total context of this particular election to be a failure to provide adequate safeguards to insure a fair election cannot be determined until a trial is had and the entire proceedings of the election have been presented. The Court cannot, therefore, presently rule on the issue of whether the recordation and challenge procedures were statutorily required in order to make the presence of observers an adequate safeguard. Summary judgment on this issue must, therefore, be denied.

The defendant contends that irrespective of whether they were statutorily required to institute the recordation and challenge procedures, the protestants failed to give the union adequate notice of this complaint and, therefore, the Secretary may not now litigate this issue. It is clear that the protestants did not in the protest and letter of December 20 and 21, 1969, specifically refer to the failure to provide recordation and challenge procedures. The union was informed from these documents, however, that the protestants were complaining of failure to provide adequate safeguards to insure a fair election in various respects, including refusal of election officials to permit observers to keep a count of the individuals voting; refusal of election officials to count the ledger cards prior to voting; segregating the observers so that they were not permitted to properly observe the election, the ledger cards and the actions of the officials and voters; refusal of the officials to mark the ledger cards when a man voted, showing that he had voted; refusal of the officials to segregate the ledger cards of those who voted from those who did not vote; and "failure of the Local Union and Joint Council to provide any safeguard for the honest and fair conduct of such election, and in prohibiting by their actions the observers from acting as observers in violation of the International Constitution and applicable federal law."

■ In *Local 6799* the Supreme Court recognized that the rank and file union members may use "broad or imprecise language in framing their internal union protests" and that they often will "lack the necessary information to be aware of the existence or scope of many election violations." Recognizing that union democracy was too important to permit these deficiencies to foreclose relief from election violations, the Court mandated lower courts to "impose a heavy burden on the union to show that it could not in any way discern that a member was complaining of the violation in question." Whether or not the union can prove that it had no way of knowing from the complaint lodged and other information in its hands that the members might also be complaining of the failure to permit the observers to record the names of voters and to challenge the eligibility of voters is, of course, a matter of proof on which we do not presently possess sufficient information to grant judgment, particularly in light of the heavy burden placed upon the union.

■■ The union finally contends, as to the above issues, that the Secretary has not proved that these alleged violations may have affected the outcome of the election. The raising of this issue by the defendant is premature because any violation of Section 401 establishes a prima facie case that the violation may

have affected the outcome of the election, which can, of course, be overcome by the defendant with evidence that supports a finding that the violations did not affect the outcome. Wirtz v. Hotel, Motel & Club Employees' Union, Local 6, 391 U.S. 492, 506–507, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968) (hereinafter referred to as "*Hotel Employees Union*"). It is up to the defendant, therefore, to prove that the violations did not affect the election result, not up to the plaintiff to prove the contrary. Accordingly, the failure of the secretary to so prove is no ground for summary judgment.

As to the issue of failure to allow the observers to record the names of voters and to challenge any ineligible voters, we conclude, in summary, that whatever affirmative defenses the union may possess, it will not be entitled to judgment until after all factual matters are resolved and it has met the burdens placed upon it by the decisions in *Laborers Union, Local 6799*, and *Hotel Employees Union*. Accordingly, its motion for summary judgment as to these issues must be denied.

The next deficiency which the Secretary asserts as a violation of Section 401 is that the union failed to retain twenty of the ballots from the election and certain slips of paper upon which were written the names and ledger numbers of voters who did not have union membership cards. The defendant moves for judgment as to this aspect of the suit on the same grounds it raised in response to the recordation and challenge procedures discussed above.

As to the initial question of whether the protestants' failure specifically to assert these grounds in their internal protest precludes the Secretary from litigating those issues, we note that the protestants clearly did not specifically refer to these charges in their December 20 and 21, 1969 protest and letter. On December 17, however, the protestants had sent to the union a letter suggesting certain procedural safeguards which included the suggestion that all election records be maintained for a period of one year after the election. While we disagree with the Secretary's contention that the December 17 letter, sent three days prior to the election and received by the union two days after the election, may be considered as a portion of the election protest, *cf.*, Wirtz v. Teamsters Industrial and Allied Employees Union Local No. 73, 257 F.Supp. 784 (N.D.Ohio 1966); Wirtz v. Great Lakes District Local No. 47, International Organization of Masters, Mates & Pilots, 240 F.Supp. 859 (N.D.Ohio 1965), we do believe that it may be probative as to what issues the union had fair notice the protestants were concerned about, particularly in light of the strong burden placed upon the union to attempt affirmatively to discern the scope of the complaints and to "expand its inquiry beyond the specific challenge" and redress any grievance that the complaint could reasonably be construed to have asserted. *Laborers Union*, 389 U.S. at 484, 88 S.Ct. at 643, 19 L.Ed.2d 716. Because we would need to be cognizant of the factual relationship of the December 17 letter to all other proceedings involved herein before a ruling may be rendered, summary judgment on this issue likewise would not be appropriate.

A difficult question is raised if it should ultimately be determined that the December 17 letter had no probative value and that the members may not be deemed to have exhausted their union remedies. This question is whether the Secretary is empowered to litigate in a § 402 suit a § 401 violation that he has discovered during the course of his investigation of which the union member was unaware at the time of his original protest to the union and which he did not, obviously, directly protest to the union, when the additional alleged violation is directly related to those specific charges that were presented originally to the union. This question was not answered in either *Laborers Union* or *Local 6799*, although we believe those cases do offer some assistance in its resolution.

*Laborers Union* dealt with the situation where the union was deemed to have knowledge of the controverted election violation. Although the question presented by the petition for a writ of certiorari in *Local 6799* was "whether, in an action to set aside a union election . . ., the Secretary . . . may allege only those violations of the Act which were protested internally by the complaining member . . .?", 39 U.S.L.W. 3182, the Court's holding was more limited and was merely that when a union member possesses information concerning an alleged § 401 violation and does not protest it to the union, the Secretary may not then litigate that issue in a subsequent suit.

As noted above, the Court remarked in *Local 6799* that union members often will lack the necessary information to be aware of the existence or scope of many election violations and that union democracy is too important to permit these deficiencies of the rank and file, generally laymen without legal or investigative assistance, to foreclose relief from elections violations. 403 U.S. at 340, 91 S.Ct. 1841. And in *Laborers Union*, the Court noted that Congress, in giving the Secretary a broad investigative power could not have intended that his right to relief be defined by a complaining member's ignorance of the law or the facts or by the artlessness of the member's protest. 389 U.S. at 485, 88 S.Ct. 639. These two cases make quite clear the proposition that the § 402 prerequisites for suit are to serve the function of preserving the vitality of internal union mechanisms for resolving election disputes at the same time as insuring the fairness of union elections which §§ 401 and 402 were designed generally to promote. See *Local 6799*, 403 U.S. at 340, 91 S.Ct. 1841, 29 L.Ed.2d 510; *Laborers Union*, 389 U.S. at 482–483, 88 S.Ct. 639.

We believe, consistent with the Supreme Court language referred to above, that the dual policies of promoting strong union dispute-resolving mechanisms plus insuring fair elections will best be served when the Secretary is allowed to litigate an alleged § 401 violation relating to and arising from the same series of transactions about which a union member did internally protest but which specific violation the member did not internally protest because of his ignorance of the facts as to the scope of the violations at the time that he filed his protest.

The logic of this conclusion is compelling in the factual circumstances of this case. The protestants internally complained of various deficiencies in the conduct of the election all of which occurred on the day of the election. The potential for violating the statutory mandate that all election records be kept for one year lasts for a period of time extending well beyond the date of the election and which cannot conceivably be violated until after the election is over. In the instant case, the challenged election conduct was protested on the day of the election and the next day prior to the alleged violation of failing to retain these records. Yet the very failure to retain, which the protestants could not practically discover until after their protest had been lodged, may possibly be the vehicle by which any fraudulent election conduct is concealed. If the failure to retain were not discovered until the Secretary instituted his investigation and he were precluded from including this § 401 violation in any complaint until after the union member filed and pursued a second protest with the union months after the first, the Secretary would either have to bring suit based solely upon the initial protest, which suit could not include any reference to what might be the technique for concealing the election misconduct or be compelled to wait up to an additional three months (thus a minimum of six months after the initial protest was filed) before he could bring a suit which deals with the total package of alleged election violations.

Such a reading of the statute, which would require either a piecemeal consideration of the charges by both the union

and the courts or extensive delays before final resolution could ultimately be had, would not further either the goal of effective union dispute-resolving mechanisms or the insurance of fair elections particularly when, as here, the late-discovered complaint is a technical violation related to the other alleged violations which were protested and is one which could not physically take place or occur until after the election.

Our conclusion is consistent with *Local 6799* in that the Secretary is precluded from litigating any alleged violation based upon facts about which the union member possessed knowledge but which he chose not to protest. To effectuate the purposes of § 402 as outlined in that case, we add the further requirement that the violation asserted by the Secretary which was not protested to the union must relate to and arise from the same series of transactions which were protested. In opposition to this conclusion, the defendant refers us to Wirtz v. Local 174, American Federation of Musicians, 272 F.Supp. 294 (E.D.La. 1967), wherein the Secretary was precluded from litigating a union's failure to retain election records because the protestant had only internally protested the reasonability of an eligibility rule, and Hodgson v. Local 1299, United Steelworkers of America, AFL–CIO, 453 F.2d 565 (6th Cir. 1971), wherein the Secretary was precluded from litigating the reasonability of an eligibility rule when the member had only internally protested the method of its application without ever challenging the rule itself. Because the new issue attempted to be litigated by the Secretary in the former case was totally unrelated to any aspect of the member's internal protest and because the protestants in the latter case had knowledge of the eligibility rule but had chosen not to protest internally its validity but only its form of application, we believe that these decisions are clearly distinguishable from the conclusion that we have reached herein and we are in full accord with them.

In summary, we conclude as to the issue of whether the Secretary may litigate the union's failure to retain the election records for the required period of time that the defendant's summary judgment motion must be denied because (1) enough facts have not been developed in the record for the Court to determine if the union met its affirmative duty of expanding its inquiry beyond the specific protest, particularly as relates to the letter of December 17, and (2) even if the union was not required to take cognizance of the December 17 letter, the Secretary may nevertheless litigate this issue discovered during the course of his investigation because it relates to and arises from the same series of transactions about which the protestants did internally complain, particularly since the protestants did not have knowledge of the facts constituting this alleged § 401 violation at the time they lodged and pursued their internal protest.

The next basis upon which the defendant moves for summary judgment is that the protestants' refusal to furnish to the intra-union appellate bodies any evidence to support their post-election protest bars the Secretary's entire suit in that the protestants did not exhaust their union remedies as required by Section 402(a) of the LMRDA. That section states in pertinent part:

A member of a labor organization—
(1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or

(2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation,

may file a complaint with the Secretary . . . [alleging any § 401 violation] . . .

 In enacting the exhaustion requirement of § 402(a), Congress did not specify precisely what actions would be deemed as exhaustion except for the reference to the "remedies available un-

der the constitution and bylaws of [the Union]." We conclude, therefore, that if a union member has done all required of him under the union constitution and bylaws, his actions of protest may be deemed as exhaustion of his union remedies.

 The Constitution of defendant's parent body, the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, in Article XXII, Section 5, provides as follows in relation to election protests:

(b) In the event there shall be any protest or charge by any member concerning the conduct of the election after the election has been held, such protest or charge shall be made in writing by registered or certified mail by such member within forty-eight (48) hours setting forth the exact nature and specification of the protest and his claim as to how it has affected the outcome of the election. Such protest or charges shall be made to the Local Union Secretary-treasurer who shall refer the protest or charges to the Local Union Executive Board for disposition. The decision of the Local Union Executive Board shall be appealable to the Joint Council and thence to the General Executive Board for final decision, which is not appealable to the Convention, in accordance with the provision of Article XIX of the International Constitution to the extent that such provisions may be applied to an election protest or charges.

Nowhere in the International Constitution is there any requirement that the member must present evidence in support of his protest. As there is no statutory requirement that the complaining members present proofs or witnesses in support of their charges (which is logical as such members are given no power by the LMRDA to subpoena witnesses or compel the production of documents), and since there is no such requirement in the union's constitution or by-laws, we conclude that the failure to present evidence does not constitute a failure to exhaust internal union remedies. Wirtz v. American Guild of Variety Artists, 267 F.Supp. 527, 533 (S.D.N.Y.1967).

 The only statutory prerequisites for suit, with the one exception outlined above in regard to the alleged failure to retain election records, are that the union member must have done that which is required by the union constitution and bylaws and the union must have been given fair notice of the charges asserted.

The defendant cites several decisions interpreting Section 101(a) (4) of the Act, 29 U.S.C. § 411(a) (4), which allows a union to compel a member to exhaust his union remedies prior to bringing suit against it, to mean that the member must in good faith present his claim to the union if so required. Harris v. International Longshoremen's Ass'n, Local 1291, 321 F.2d 801, 806 (3rd Cir. 1963); McCraw v. United Assn. of Journeymen and Apprentices of Plumbing, etc., 341 F.2d 705, 711 (6th Cir. 1965). Through this analogy, the defendant appears to be arguing that this Court should adopt a per se rule to the effect that the failure of a union member to present witnesses in his behalf at a union inquiry into his charges indicates bad faith upon his part. The question of whether protestants reasonably exhausted their internal remedies will, we believe, depend in part on what the evidence at trial indicates. Such evidence might, for example, show that the member was intimidated or believed himself to have been intimidated by the more experienced, articulate, and better counseled Executive Board.

 We agree with the cited cases that a lack of good faith in the union member's presentation of his protest may lead to dismissal of the Secretary's action based thereon, but we cannot conclude as a matter of law that the failure to present evidence of the charges indicates a lack of good faith, particularly in light of the strong affirmative duty placed upon the union to ascertain the scope of the member's protest. Because the presence or absence of good faith on

the part of the protestants in their exhaustion of union remedies is a factual matter, the defendant's motion for summary judgment must be denied.

■ Even were we to conclude that a member's failure to present evidence in support of his charges to the union alone precludes him from properly complaining to the Secretary, the defendant would nevertheless not be entitled to summary judgment on this issue. § 402(a) (2) states that the protesting member may file a complaint with the Secretary if he has not obtained a final decision on his protest within three months. The parties stipulate that a final decision was not rendered until after the three months period had elapsed. Even if the union properly could have repudiated the members' protest on the grounds that they supplied no corroborating evidence in support of their charges, its failure to do so within the time limitation prescribed by Congress authorized the members to file their complaint with the Secretary and authorized the latter to file the instant lawsuit. Therefore, whether or not the members may be deemed to have "exhausted" their union remedies under § 402(a) (1), they clearly "invoked such available remedies without obtaining a final decision within three calendar months after their invocation" under § 402(a) (2) and the Secretary is entitled to bring this suit. *Accord*, Shultz v. Local 1291, 429 F.2d 592 (3rd Cir. 1970); Wirtz v. American Guild of Variety Artists, *supra.*

■ Another ground asserted by the defendant for summary judgment is that the letter of complaint from the members to the Secretary failed to allege all the § 401 violations that the latter is now attempting to litigate and that those grounds not contained in the letter to him should be unavailable as grounds for now contesting the election. We can find no case authority or statutory requisite that the complaint to the Secretary must be styled in any particular form or that its contents are a limitation upon the Secretary in any subsequent litigation. The specificity requirement of § 402 relates to the complaint to the union, not to the Secretary. This section has been construed to require the following. The union must have fair notice of violations for it to have an opportunity to correct them. Before such complaint may even be made to the Secretary, the internal union remedies must either have been exhausted or, alternatively, invoked without final decision for three months. The complaint to the Secretary is a condition precedent which enables him to begin an investigation of the contested election. Nowhere in the statute is there any suggestion that the complaint to the Secretary is a limitation upon the grounds which may be asserted at a subsequent proceeding to set aside the election so long as all the other requisites of § 402 have been met. Wirtz v. Local Union 169, 246 F.Supp. 741, 751 (D.Nev.1965); *cf.,* Wirtz v. Local 191, 321 F.2d 445 (2d Cir. 1963).

■ A general observation seems appropriate at this point. The defendant's motion is predicated in large part on the basis that certain of the grounds for challenging the election in the Secretary's complaint were not specified with particularity in the objections filed by the protestants with the union. We do not read either the statute or the Supreme Court's decisions in *Laborers Union, Local 6799* and *Hotel Employees Union* as requiring the protest to achieve the formality of pleadings nor the internal proceedings to approximate a trial. Given the ultimate purposes of the statute to insure fair union elections while giving the union involved a reasonable opportunity to police its own election procedures, and recognizing that the principals who will be involved are laymen, not lawyers, it seems obvious that common law pleading and rules of evidence are inappropriate. *Local 6799*, as we view it, stands for the proposition that the failure to protest a *known* possible objection is in effect a waiver which precludes its assertion by the Secretary in a subsequent suit. Where, as here, the election has been protested on a number of grounds and the union has had an op-

portunity to consider not only them but the fairness of the entire election, it is inconsistent with the ultimate objective of the statute to be hypertechnical about the issues the Secretary may raise which are directly related to the fairness of the election.

The defendant contends finally in support of its motion for summary judgment that the failures of the members to protest to the union and of the Secretary to prove that any ineligible voters had voted or that any voters had voted more than once during the election refutes a finding that the alleged failure of the election officials to segregate or mark the ledger cards of members who voted or the alleged segregating of the observers may have affected the outcome of the election.

As to the union's contention that the members failed to assert internally that any ineligible voters had voted or that voters voted more than once, we cannot come to any conclusion other than that, if the union was put on notice of anything by the protest and letter of December 20 and 21, it was that the observers had been prevented from carrying out their obvious function of insuring that no ineligible voters voted and that eligible voters did not vote more than once. In any event, it is a factual matter whether the union did receive fair notice of this claim and summary judgment could not be granted for the defendant on this issue.

As to the secondary contention that the Secretary has failed to prove that any of the alleged violations affected the outcome, we have previously indicated that, once the Secretary has proven an alleged § 401 violation (which, of course, cannot occur until a trial is had), the burden shifts to the defendant to show that such violation did not affect the outcome. *Hotel Employees Union, supra,* 391 U.S. at 506–507, 88 S.Ct. at 1743, 20 L.Ed.2d 763. Thus, if the Secretary's allegations were limited to the failure of the union to retain twenty ballots for one year, or to a claim that twenty voters voted twice and the defendant could af-

firmatively prove that the election winners won by 2000 votes, the union certainly would have a valid defense. But the failure of the Secretary to prove at this stage of the proceedings that the alleged violations did affect the outcome of the election is no grounds for summary judgment for the defendant. To justify summary judgment prior to trial, the defendant would have to prove affirmatively that any such violations could not possibly have affected the outcome of the election. This it has not attempted to do. Accordingly, its motion for summary judgment on this ground must also be denied.

An order will enter denying the defendant's motion for summary judgment or partial summary judgment.