Peter J. BRENNAN, Secretary of
Labor, et al.

v.

**LOCAL UNION NO. 639, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Ind., Appellant.**

**No. 73–1938.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 30, 1973.

Decided March 8, 1974.

Philip W. Amram, Washington, D. C., with whom Gilbert Hahn, Jr., and Sola-man G. Lippman, Washington, D. C., were on the brief, for appellant.

Harold A. Mouzon, Jr., Atty., U. S. Dept. of Labor, with whom Morton Hollander, Atty., Dept. of Justice, was on the brief for appellee, Brennan. John V. Long, Washington, D. C., entered an appearance for appellees Daniel George and Phillip A. Feaster.

Before ROBB and WILKEY, Circuit Judges, and VAN PELT,* United States Senior District Judge for the District of Nebraska.

VAN PELT, Senior District Judge:

Local Union No. 639, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Inc. (hereinafter the Union) appeals from an order of the district court granting summary judgment to the Secretary of Labor (hereinafter the Secretary) and two members of the Union, Daniel George and Phillip A. Feaster. The action was originally brought by the Secretary against the Union under the Labor-Management Reporting and Disclosure Act of 1959, as amended (hereinafter the Act) to set aside an election of officers held by the Union on January 23, 1972. The complaint alleged that the Union violated § 401(e) of the Act [1] by failing to mail notice of the election to each member of the Union at his last known home address at least fifteen days prior to the election and by imposing an unlawful meeting attendance requirement on candidates for office.[2] After the action was filed, two members of the Union who had complained of the conduct of the election to the Secretary [3] were allowed to intervene in the suit.

On June 8, 1973, the intervenors moved for a summary judgment under

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. 29 U.S.C. § 481(e) (1970).

2. The complaint also alleged other violations of § 401 which are not a part of this appeal.

3. Section 402 of the Act (29 U.S.C. § 482), which sets forth the enforcement procedures regarding a contested election, states that the Secretary may file an action to set aside an election only after receiving a complaint by a union member who has exhausted his internal union remedies concerning the conduct of the election.

Rule 56 of the Federal Rules of Civil Procedure. On June 26, the Union noticed the deposition of the Secretary or his designee. On July 10, the Secretary filed a motion for summary judgment on the same grounds as the intervenors. On July 13, the Secretary filed a motion for a protective order under Rule 26(c) of the Federal Rules of Civil Procedure which was granted on July 17 despite the objections of the Union. On August 17, after an extensive oral argument the district court granted the motions for summary judgment saying:

> "The Court finds that there is no dispute of the fact that out of 6,487 members of the union, notice of the '72 election was mailed only at a maximum to 2,700 of them; that this is a clear violation of 29 U.S.C. § 481(e); that under the circumstances where 58 percent of the membership did not receive the statutory notice and where only 23 percent of the membership voted, the Court is entitled to conclude irrebutably that the election was effected thereby.
>
> "I shall, therefore, grant summary judgment to the plaintiff, declare the election null and void, order a new election, order costs for the plaintiff, and deny the defendant's motion to dismiss."[4]

On August 21, the district court entered an order directing a new election under the supervision of the Secretary and further directing that no meeting attendance requirement be imposed on the right of members to be candidates.

The issues on appeal are: 1) Is it permissible to grant a summary judgment under § 402(c) of the Act; 2) If a summary judgment is permissible under the Act, was it proper in the factual context of this case; 3) Was the directive of the district judge prohibiting the application of the meeting attendance requirement proper; 4) Was the protective order proper? For the reasons given below, we affirm the order of the district court.

## I. THE PROPRIETY OF A SUMMARY JUDGMENT UNDER § 402(c).

Section 402(c) [5] of the Act grants the Secretary the authority to bring a civil action against a labor organization if, after investigating a complaint by a member of that organization who has exhausted his internal remedies, he finds that there is probable cause to believe that the organization has violated any of the election procedures specified in § 401. Section 402 also provides that:

> "If, upon a preponderance of the evidence *after a trial upon the merits,* the court finds—
>
> . . . that the violation of section 401 may have affected the outcome of an election, the court shall declare the election, if any, to be void and direct the conduct of a new election under [the] supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization." (Emphasis added)

The Union argues that the statute specifically requires a trial and that summary judgment is improper when the crucial facts are contested. In addition, it argues that the clear import of Wirtz v. Hotel, Motel & Club Employees Union, Local 6, 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968), (hereinafter Wirtz v. Local 6) is that § 402 requires a trial on the merits in every case.

In only one case, Hodgson v. District 5, U.M.W. 68 L.C. ¶ 12,867 (W.D.Pa. 1972), has a court read the language of § 402 literally and held that under no circumstances could the Secretary be granted a summary judgment in an action

---

4. Since there was a factual dispute whether George and Feaster had exhausted their internal union remedies as required by § 402(a), regarding the meeting attendance requirement, the district judge made no finding as to whether this requirement was a violation of § 401(e).

5. 29 U.S.C. § 482(c) (1970).

brought under that section. In that case, the court, in denying the Secretary's motion for summary judgment, quoted § 402(c) and stated, "We interpret the foregoing language in the Act to require a *trial* before we can decide whether or not to grant relief requested in the complaint." (Emphasis in original) The court, reasoning that, "Congress must have had some reason for incorporating this provision in the Act," held that § 402(c) requires a trial in all actions brought under it.

Several other courts, however, have granted summary judgments to the Secretary in action brought under § 402. In Hodgson v. District 6, U.M.W., 474 F.2d 940 (6th Cir. 1972), the court, in reversing the district court which had granted summary judgment to the union, held that the complainant had exhausted his internal union remedies and that the rule which had barred his candidacy was an unreasonable rule in violation of § 401(e) and granted summary judgment to the Secretary. In Schultz v. Independent Employees Union, 62 L. C. ¶ 10,869 (E.D.Wis.1970), the court granted judgment to the Secretary after holding a hearing. The facts in this case were very similar to those in the instant case and involved the failure to mail notice of an election to the members of the union. In addition, in Wirtz v. Local 1622, Carpenters, 285 F.Supp. 455 (N.D.Cal.1968), the court granted judgment to the Secretary on the basis of stipulated facts, without holding a trial, on a complaint which alleged viola-

tions including the failure to mail notice of an election.

The Union places heavy reliance on Hodgson v. Local 734, Teamsters, 336 F.Supp. 1243 (N.D.Ill.1972), in which the court refused to grant summary judgment to the union. However, this case does not support the Union's position. In this case the main issue was whether the complainants had exhausted their internal union remedies with respect to several of the alleged violations. Factual issues arose as to whether notice of several of the violations had been adequate and whether certain of the alleged irregularities were, in fact, violations of the Act.[6] It is clear that the court's refusal to grant summary judgment was based on the failure to meet the requirements of Rule 56, since there were still genuine issues of material fact which had to be resolved and not on the basis that the language of § 402(c) as to "a trial upon the merits" precludes granting summary judgment.

The union also argues that the clear import of Wirtz v. Local 6, 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968), is to require a trial in every action under § 402. However, a careful reading of the case shows that its main effect was to lessen the burden on the Secretary to prove that a violation of § 401 may have affected the outcome of an election, by holding that any proved violation of § 401 creates a prima facie case that the outcome may have been affected. The Court was not directly faced with the problem presented in this case and its

---

6. In *Hodgson* the matters upon which the union sought summary judgment, contending that they either were not violations of the Act or that internal remedies had not been exhausted due to inadequate notice, concerned: 1) recordation and challenge procedures; 2) retention of ballots; 3) the failure of the protestants to furnish any evidence to the union appellate bodies; 4) claims regarding ineligible voters. With respect to each of these matters the court found: 1) the recordation and challenge procedures presented "a matter of proof on which we do not possess sufficient information to grant judgment." 336 F.Supp. at 1249; 2) the retention of ballots presented a question of internal exhaustion and the court "would need to be cognizant of the factual relationship of the December 17 letter to all other proceedings involved herein before a ruling may be rendered." *Id.* at 1250; 3) the failure to furnish evidence was a question of "good faith on the part of the protestants in their exhaustion of union remedies [which] is a factual matter." *Id.* at 1253–1254; 4) as for the ineligible voters "It is a factual matter" *Id.* at 1255. Thus it is clear that as factual issues remained summary judgment was inappropriate.

opinion simply does not support the contention that § 402 requires a trial in every case.

With respect to interpreting labor legislation the Supreme Court has said:

> "We have cautioned against a literal reading of congressional labor legislation; such legislation is often the product of conflict and compromise between strongly held and opposed views, and its proper construction frequently requires consideration of its wording against the background of its legislative history and in light of the general objectives Congress sought to achieve . . . . The LMRDA is no exception." Wirtz v. Local 153, Glass Blowers Association, 389 U.S. 463, 468, 88 S.Ct. 643, 646, 19 L.Ed.2d 705 (1968).[7]

Thus, the language in the Act referring to, "a trial upon the merits," must be read in light of the overall scheme of the Act. There is no indication that the Congress in using this language intended to make inapplicable to such actions Rule 56 of the Federal Rules of Civil Procedure providing for summary judgment. In fact the contrary would appear from the fact that Rule 81 of the Federal Rules of Civil Procedure relating to applicability makes no exception of the Act under which this case was brought. In addition, there is an apparent congressional concern that there be an early resolution of allegations regarding disputed elections evidenced by the short deadline provided for the protestant to appeal to the Secretary (one calendar month after he has exhausted his internal remedies), and the refusal to allow a stay of the district court's order pending appeal. It is equally clear that Congress was concerned with the standard of proof required before an election could be set aside and insuring that the union would receive an independent and detached judgment on the Secretary's allegations. These concerns were satisfied in the statute by requiring that the order for a new election come only from an Article III court and by requiring that the Secretary prove his allegations by a preponderance of the evidence.

If there are no material facts which are contested it would be sheer folly to require the expense and delay of a trial when other methods of resolution are available. Finally, Rule 56 itself has strict requirements which must be satisfied before summary judgment can be granted. Thus, we hold that there is nothing inherent in § 402 which requires a trial in every case.

We next consider whether this was a proper case for summary judgment.

## II. THE PROPRIETY OF A SUMMARY JUDGMENT IN THIS CASE.

Rule 56(c) of the Federal Rules of Civil Procedure provides in part:

> "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

These standards, however, cannot be analyzed in a vacuum, but can only be understood in the context of the statute under which the action was brought since the statute determines (a) what

---

7. In that same opinion and as a footnote to the previous passage, the Court said:

"Archibald Cox, who actively participated in shaping much of the LMRDA, has remarked:

"The legislation contains more than its share of problems for judicial interpretation because much of the bill was written on the floor of the Senate or House of Representatives and because many sections contain calculated ambiguities or political compromises essential to secure a majority. Consequently, in resolving them the courts would be well advised to seek out the underlying rationale without placing great emphasis upon close construction of the words.' Cox, Internal Affairs of Labor Unions under the Labor Reform Act of 1959, 58 Mich.L.Rev. 819, 852 (1960)." 389 U.S. at 468, 88 S.Ct. at 646.

the material facts are and (b) when a party is entitled to judgment as a matter of law.

A. Section 401(e) of the Act requires that: "Not less than fifteen days prior to the election notice thereof shall be mailed to each member at his last known home address." An earlier version of the bill provided, "that notice of a union election must be given in a manner which is reasonably calculated to inform substantially all of the members eligible to vote of the time and manner of seeking nomination and of the place and date of the election." However, this language was changed before enactment to the current language specifically requiring mailed notice.[8] It is clear that Congress intended at a minimum that notice be mailed to each member and that other means, however reasonable, were insufficient.

B. Section 402 provides that the Secretary must prove by a preponderance of the evidence that the result of the election "may have been affected" by the violation. In Wirtz v. Local 1622, Carpenters, 285 F.Supp. 455 (N.D.Cal.1968), the court held that, under this standard, "The Secretary is only required to prove 'the existence of a reasonable probability that the election may have been "affected" by an alleged violation of. § 481(e) [§ 401(e)].'" Id. at 464. In Wirtz v. Local 6, 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968), the Supreme Court held that a proved violation of § 401 created a prima facie case that the election may have been affected.

The uncontested facts in this case as found by the district court are: 1) there are 6,487 members in the Union; 2) notice was mailed at a maximum to only 2,700 members (42 percent of the membership); 3) only 1,456 members voted in the election (23 percent of the membership). The Union contends that genuine issues of material fact are presented by these claims: 1) the Union had a reasonable excuse for failing to have all the home addresses of its members and this was the cause of its failure to mail notices; 2) the Union gave notice by personal service to every member who did not receive mailed notice at home; 3) the number of members who received no notice (none) was smaller than the margin of winning candidates (400). It is clear from the uncontested facts that the Union's failure to mail notices was a violation of § 401(e) and that a prima facie case was established for setting aside the election. The only question is whether the additional facts relied upon by the Union are material and whether they rebut the presumption that the election was affected.

In Wirtz v. Local 1622, Carpenters, 285 F.Supp. 455 (N.D.Cal.1968), no notice of the contested election was mailed to 382 members of the union. Only 682 members voted out of 2,700 members who were eligible. The court felt that whether the failure to mail notices was excusable depended on whether the union, in the exercise of reasonable care, could have insured all members would have received notice. The union itself maintained no mailing lists of its membership and all of its notices and communications were made through a weekly union newspaper. The evidence showed that the union for several preceding months had been billed for several hundred less newspapers than it had eligible members. Under these circumstances the court felt that the union was put on notice that not all of its members had been receiving notices and that the failure to insure that proper notice was given to all members was not accidental.

---

8. Senator Dodd, one of the sponsors of the amendment, stated on the Senate floor:
"By means of this amendment, I am trying to make certain that every union member will receive a written notice at least 15 days before an election is to be held. . . . So I think it is very little to require that a union mail a postal card notice 15 days before an election of officers is to be held, to remind the membership and to notify the membership that the election is to be held. That is not asking very much." Congressional Record 15189, Senate, April 23, 1959.

Consequently, the court found the union had violated the Act. The court then held:

"It is entirely reasonable to conclude that if, as required by law, each member had been sent an adequate notice by mail, the voter turn-out on the day of the election would have been substantially higher. With more voters casting their ballots, the election results necessarily would have been affected." *Id.* at 464.

Similarly, in Wirtz v. Local 169, Hod Carriers, 246 F.Supp. 741 (D.Nev.1965), the court set aside an election when out of 512 eligible members 30 had no notice of the election and only 161 members voted. The court held:

"[T]he failure to send election notices to thirty members was the consequence of gross neglect in the maintenance of proper records and cannot be justified as an accidental mistake occurring in the exercise of due care." *Id.* at 752.

In Schultz v. Independent Employees Union, 62 L.C. ¶ 10,869 (E.D.Wis. 1960), the union did not mail any notices to its members, but did post notices on bulletin boards throughout the plant. The court held that the posting of a notice of election on bulletin boards could not be substituted for the specific requirement in § 401(e) for mailing notice and ordered a new election.

These cases clearly show that the facts set forth by the Union, even if true, were not material facts which would prevent the granting of summary judgment. As the Supreme Court said in Wirtz v. Local 6, 391 U.S. 492, 508, 88 S.Ct. 1743, 1752, 20 L.Ed.2d 763 (1968): "None of the factors relied on is tangible evidence against the reasonable possibility that the wholesale [failure to mail notice] did affect the outcome."

The uncontradicted evidence showing that the Union had violated § 401(e) created a prima facie case that the election may have been affected. Since the Union was unable to contradict this by raising any factual dispute as to a material fact, the district court correctly held that the Secretary was entitled to a summary judmgent.

## III. THE MEETING ATTENDANCE REQUIREMENT.

The Union also appeals from that portion of the district court's order which directed that the Union could not enforce any meeting attendance requirement in the new election. Prior to the contested election, Article VI, § 3 of the Union's bylaws provided that members "attend at least four (4) regular meetings of this local union in each of two (2) consecutive years prior to the nominating meeting." On the basis of this bylaw, eight nominees were ruled ineligible for office as they had not attended eight meetings within the past two years. During this period the Union had held only fourteen meetings. This ruling was appealed to the International Union and its President ruled that the bylaw was inconsistent with the International constitution in that it required attendance at more than 50 percent of the meetings held by the Union.[9] The International President instructed the Union not to apply its bylaws in the election and to hold a new nominating meeting. At the new nominating meeting seven members were again disqualified on the basis of the meeting attendance requirement. Later the International President reversed this with respect to four of the members. Finally, the International told the Union it could apply its bylaw insofar as it complied with the International constitution, i. e., it could require attendance at seven of the fourteen meetings.

9. Article II, Section 4(a)(1) of the International Constitution provides in pertinent part:

"A Local Union in its Bylaws may require that a member, to be eligible for election to any office in the Local Union, must have attended a minimum number of the regular or divisional meetings of the Local Union, but not to exceed fifty percent (50%) during the twenty-four (24) consecutive months prior to nomination."

At the hearing on the motion for summary judgment a factual question arose whether the protestants had exhausted their internal union remedies regarding the meeting attendance requirement. Consequently, the district court could not use the meeting attendance requirement as a ground for granting summary judgment since there was a factual dispute whether it had jurisdiction to set aside the election on this ground.

In Hodgson v. Local 6799, United Steelworkers, 403 U.S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971), the union member had filed an internal protest concerning election irregularities, but did not challenge a meeting attendance rule regarding eligibility for office. After an adverse ruling from the union on his complaint the member complained to the Secretary. In his action the Secretary attempted to have the election set aside on this ground as well as several others which had been raised internally. The Supreme Court held that the failure of the member to exhaust his internal remedies barred the Secretary from litigating his claim. In a dissent Justice White stated:

"[I]f the Secretary finds an invalid bylaw that purports to govern a new election that has been validly ordered on a claim that has been exhausted, as in this case, the Secretary appears to have express grounds in the Act, independent of the complaint-exhaustion requirements, to insist that the new election be conducted in accordance with the law and to insist that a court adjudicate the matter if the union stands by its bylaw provision." *Id.* at 344, 91 S.Ct. at 1848.

In Trbovich v. United Mine Workers, 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972), the issue was whether the complaining union member could intervene in the action brought by the Secretary. In deciding that he could, the Court was faced with defining the scope

of that intervention. The Court determined that the intervenor could present evidence, but declined to permit him to assert additional grounds for setting aside the election. As a footnote to this last holding the Court said:

"This limitation, however, applies only to the claimed grounds for setting aside the old election, and not to the proposed terms of any new one that may be ordered. For if the court finds merit in the Secretary's complaint and sets the election aside, then the statute requires the court to direct a new election in conformity with the constitution and bylaws of the union and the requirements of Title IV. Since the court is not limited in this regard to considerations of remedies proposed by the Secretary, there is no reason to prevent the intervenors from assisting in fashioning a suitable remedial order. Cf. Hodgson v. Steelworkers, 403 U.S. 333, 344, 91 S. Ct. 1841, 29 L.Ed.2d 510 (White J. dissenting)." *Id.* 404 U.S. at 537, 92 S.Ct. at 636.

The Court has clearly distinguished between using a violation as a ground to set aside an election and using a violation with respect to setting the ground rules for a new election which has been ordered.

The evidence showed that as originally applied the Union's bylaw violated the International constitution. The evidence also showed that the bylaw effectively disqualified 97 percent of the members from running for office.[10] In Wirtz v. Local 6, 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968), the Supreme Court held that a bylaw which limited eligibility for major elective office to members who had previously held office and thereby rendered 93 percent of the membership ineligible was not a reasonable qualification within the meaning of § 401(e). Similarly, in Brennan v. Local 3911, Steelworkers, 372 F.Supp. 961

10. The Union's records of attendance for the fourteen meetings held in the twenty-four month period prior to the nominations showed that the number in attendance at each meeting varied between 37 (May, 1970) and 134 (October, 1970) and averaged 64. At the time of the election there were 6,487 members in the Union eligible to vote.

(N.D.Ill.1973), the court found that a meeting attendance requirement that excluded 94.7 percent of the membership from running for office was invalid. *Contra,* Brennan v. Local 5724, 489 F.2d 884 (6th Cir. 1974).

■ In light of the foregoing facts and the statutory command that, "the court shall . . . direct the conduct of a new election . . . so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization," we hold that the district court did not err in ruling that the Union, having an invalid bylaw as originally applied, could not retroactively adopt and apply any meeting attendance requirement in the new election.

## IV. THE VALIDITY OF THE PROTECTIVE ORDER.

■ The Union also appeals from the protective order granted by the district court claiming that it was denied due process since it was prevented from continuing its discovery against the Secretary until five days after the ruling on the summary judgment motion. In view of our decision on the merits it is difficult to see how the Union was prejudiced by this ruling. Trial courts, as indicated by the Advisory Committee's Notes to Federal Rule of Civil Procedure 26(b), have broad powers to regulate or prevent discovery and such powers have always been freely exercised. *See also,* Simons-Eastern Company v. United States, 55 F.R.D. 88 (N.D.Ga.1972). The protective order was well within the discretion of the district court and as the Union was in no way prejudiced we will not disturb this order on appeal.

Judgment affirmed.

ROBB, Circuit Judge, dissenting:

I agree that summary judgment may be granted in an action brought by the Secretary pursuant to section 402(c) of the Act (29 U.S.C. § 482(c)); but I think summary judgment was not appropriate in this case.

The district judge based his order upon a violation of section 401(e) of the Act (29 U.S.C. § 481(e)). Although at the hearing on the motion for summary judgment he observed "there isn't any question about the fact that there are many disputed issues of fact in this case" (Tr. 38) he found that the Union had mailed notices of the 1972 election to only 2,700 of its 6,487 members, and in his order he concluded "as a matter of law that this failure to mail notice to 58% of the members of Local Union 639 justifies an irrebuttable conclusion that this violation of the statute may have affected the outcome of the election."

In my judgment the district judge was mistaken in concluding that the violation of the statute produced or justified an "irrebuttable conclusion" that the outcome of the election may have been affected; and I think he was wrong in granting summary judgment upon that mistaken premise.

A proved violation of section 401 establishes a prima facie case that the violation "may have affected" the outcome of an election; but this prima facie case "may of course be met by evidence which supports a finding that the violation did not affect the result." Wirtz v. Hotel, Motel & Club Employees Union, Local 6, 391 U.S. 492, 506, 507, 88 S.Ct. 1743, 1752, 20 L.Ed.2d 763 (1968).

By affidavits the Union represented that over the years it had experienced great difficulty in obtaining the home addresses of members, despite repeated and persistent efforts to secure them. According to the Union many members maintained that their home addresses were none of the Union's business and refused to disclose them. Also, said the Union, many members were transients, having no fixed addresses; and other members gave only incomplete addresses. The good faith attempts of the Union to secure addresses were recounted. The Union further represented, by affidavits of more than eighty shop stewards, that substantially every member of the Union received actual written notice of the election. According to the shop stewards they personally distributed official notices of the election to the members of Local 639 at their places of employment. The record disclosed also that of the

members voting at the election 83% had received no mailed notice, but had received notice by personal service; that of those who received mailed notices only 10% voted, but 29% of those receiving the notices by personal service voted. The percentage of members voting was the highest in the history of the Union.

Without attempting to forecast the result of a trial I think the Union's affidavits at least raised a genuine issue of fact as to the possible effect of the statutory violation on the outcome of the election. Summary judgment was therefore inappropriate.

Also, I do not find adequate support in the record for the District Court's order forbidding the Union to enforce any meeting attendance requirements in the new election. Under section 401(e) of the Act (29 U.S.C. § 481(e)) the Union was entitled to impose reasonable meeting attendance requirements upon candidates. *See* Brennan v. Local 5724, United Steelworkers of America, 489 F.2d 884 (6th Cir. 1973). The court made no finding that justified the order depriving the Union of this right.

I respectfully dissent.