John C. MARTIN, Plaintiff,

v.

The **INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS LOCAL LODGE NO. 636, an Unincorporated Labor Union, and Lee A. Reisinger, President thereof, Defendants.**

Civ. A. No. 969.

United States District Court
W. D. Pennsylvania.

June 26, 1963.

Max P. Gabreski, Oil City, Pa., for plaintiff.

Irving Murphy, Gifford, Graham, MacDonald & Illig, Erie, Pa., for defendants.

WILLSON, District Judge.

The complaint filed in this civil action is styled "COMPLAINT FOR INJUNCTION". In Paragraph 21 plaintiff stated that he is instituting this action pursuant to the provisions of "L.M.R.D.A., 29 U. S.C.A. Secs. 411, 412." On June 6, 1963, while this Court was in session at Erie, plaintiff's counsel filed and presented the complaint in open court with a request that a Restraining Order be issued pending a hearing for a Preliminary Injunction.

The plaintiff, John C. Martin, resides at 7 Clarion Street, Oil City, Pennsylvania, and is a member in good standing of the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers Local Lodge No. 636, at Titusville, Pennsylvania.

The defendant, The International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers Local Lodge No. 636, is an unincorporated local labor union, with its principal office located at 124 Spring Street, Box 473, Titusville, Crawford County, Pennsylvania.

The defendant, Lee A. Reisinger, resides on Main Street, Hydetown, Crawford County, Pennsylvania, and is President of Local 636 of the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, at Titusville, Pennsylvania.

At the time the Complaint was presented, it seemed doubtful that it alleged facts which warranted the issuance of a Preliminary Injunction. An inspection of the Complaint shows that it has been precisely drawn and the demand for relief,

as well as the factual averments, seem to adequately bring up the issues for decision. No Restraining Order was issued but instead a hearing was directed to be held on the claim for a Preliminary Injunction. That hearing was held on June 11, 1963, at which testimony was taken and other evidence presented. At this hearing defendants presented a motion to dismiss the action on the ground that the court lacked jurisdiction of the subject matter by reason of the fact that the plaintiff had not exhausted his remedies within the International organization as required by the provisions of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C.A., § 411. As the court understands it, the motion is directed towards that provision in Section 101, 73 Stat. 522, (29 U.S.C.A. § 411 (a) (4)), which permits a union to require a member to exhaust reasonable hearing procedures within the rules of the organization before instituting legal or administrative proceedings against his organization or any officers thereof.

The facts developed at the hearing may be briefly summarized. The plaintiff, John C. Martin, is a thirteen year member of the defendant union and Local 636. However, during a portion of the period he has been delinquent because of inability to pay dues during layoff periods. He has been in good standing since October of 1962. It appears without dispute that at the International Convention of the union held at Long Beach, California, May 1 to May 11, 1961, the Constitution affecting all members and local lodges throughout the country was amended with regard to the eligibility of members for local lodge offices. Prior to the convention there was no requirement in the International Constitution that a member must attend any specific number of meetings in order to be eligible to be nominated and elected to an office. However, the May, 1961 Constitution of the International was amended to require that to be eligible for an office he shall not only be a member in good standing for at least three years prior to his nomination, but in Article XXVIII, p. 111, he is required to:

"(d) have attended at least one (1) meeting out of each quarter of the calendar year and the quarter immediately preceding nominations for office unless prevented by personal illness, International or District or Local Lodge duties, regular employment or some other unavoidable situation."

The gravamen of his complaint is that plaintiff has been deprived of his equal rights and privileges within the organization to nominate candidates and to vote in elections. Specifically, he was deprived of the right to nominate a member of his choice for office at the nomination meeting held May 11, 1963, because only 14 members out of a total membership of 175 were found to have attended the requisite number of meetings in the five quarters preceding the nominating meeting as required by the Constitution. It is a fact uncontroverted that, after the International Convention of May, 1961, the by-laws of Local 636 were amended in there meetings in the Fall of that year to provide in Article V that local "OFFICERS, NOMINATIONS AND ELECTIONS" shall be in accordance with Part II, Article XXVIII of the International Brotherhood Constitution.

Plaintiff's evidence supports his allegations set out in the Complaint, Paragraphs 1 through 9, inclusive. It appears that seven of the fourteen eligible members qualified to hold office are presently officers of the Local and have held offices for the last three years. The nub of plaintiff's grievance is set out in Paragraphs 12 and 13 of the Complaint. In Paragraph 12 plaintiff complains that he was denied the right to nominate candidates of his own choice by reason of the unreasonable rules and regulations imposed without notice to him and other members of the organization of changes in the Constitution and by-laws of the International union and Local Lodge No. 636. And further, he says in Paragraph 13 that plaintiff, together with 155 other members of Local Lodge No. 636, is being

deprived of his equal rights and privileges within said Local organization to nominate candidates of his choice as provided by the Statute. His prayer for relief is that defendants be restrained and prevented from holding the elections scheduled for June 15, 1963, and that the nominations already made, that is at the meeting held May 11, 1963, be vacated and that new nominations be required whereby fifty (50%) per cent of the members of said union may qualify to hold office.

At the hearing it developed that plaintiff and other members of the Local were interested in nominating and electing a slate of officers other than the incumbents. In this connection it is to be noticed that the President, defendant Reisinger, has held office but three years, but was nominated to succeed himself at the May 11th meeting. After due notice thereof the meeting for the purpose of nominating candidates for election to office in Local 636 was held on May 11, 1963. Approximately twenty-five to thirty members out of a total membership of approximately 175 attended the nomination meeting. Nominations were opened for the election to seven offices which were to be filled in the election to be conducted June 15, 1963 by Local 636. Plaintiff testified that he went to the May 11th meeting intending to nominate several members for various offices, but found at the meeting that two of the men he intended to nominate had withdrawn their candidacy for any office except that of Trustee. These men were John Barton and Charles Peterson. They had written the President prior to the meeting that they were only interested in becoming Trustees of the Lodge whereas they had indicated previously to the plaintiff that they were interested in holding other office. The only nomination made at the meeting by the plaintiff was John Piendel for Financial Secretary. The President ruled that this proposed nominee was ineligible by reason of the fact that he had not attended a meeting in each of the last five quarters. There were fourteen individuals eligible for office but none of

these individuals, other than Peterson and Barton, were nominated by the plaintiff or any of the other parties who claim they were aggrieved. Thus this whole case depends upon plaintiff's inability to nominate the Financial Secretary of his choice. It developed, however, at the meeting that officers were nominated for the June 15, 1963 election.

Following the nomination meeting plaintiff and several others filed an appeal from the decision of the President, defendant Reisinger, with regard to the disqualification of certain members for office as provided in the Constitution. The International President ruled in substance that he had no authority but to abide by the International Constitution and the appeal was rejected as the defendant Reisinger, Local President of 636 had ruled in accordance with the International Constitution. No further appeal within the International was taken by plaintiff or the other members who support plaintiff in his grievance. The Local President being a defendant was called as a witness under Rule 43 and plaintiff's counsel was permitted to interrogate him by leading questions. This witness categorically denied the contentions of plaintiff and his other witnesses that members were not provided with the Amended Constitution, and by-laws of the International after the May, 1961 meeting in California. The President testified that the Union maintained an office which was open Saturdays for the payment of dues by members who were not under the check-off system or in employment for the time being at the Struthers Wells Plant and that since September, 1961, available copies of the International Constitution had been placed on the table in the union office. But more important, however, his testimony was that in September of 1961 some 400 copies of the Constitution were received by him and that these were distributed throughout the Struthers Wells factory and establishment to the members who were interested. Frequently thereafter the witness told members that they could secure copies by going to the union office.

It is interesting to note that none of plaintiff's witnesses other than the plaintiff testified that they had ever been at the union office in search of a copy of the Constitution. However, they all testified that they were aware that the International Convention held every four years had authority and usually did from time to time amend the Constitution.

▆ This court concludes that the plaintiff has failed to show any grounds for relief. Plaintiff conceded at the hearing that delegates to the International Convention were authorized to amend the Constitution. His complaint is that the Local officers were derelict in their duty in not informing the Local members of the Amendments. Plaintiff, however, seems to make a blank charge that the amendment requiring the attendance at one meeting during each of the five quarters to become eligible to hold office is, per se, an unreasonable regulation. However, this contention, if seriously made, is rejected because it seems very clear to the court that the regulation is reasonable. Certainly there is nothing illegal about it, nor does it appear burdensome. The rule is almost the minimum attendance requirement. It simply requires that a member attend one meeting in each three month period. But, it is to be noticed that he may be excused from that by illness or if his work interferes. The language which justifies no attendance is broad. It says:

> "and (d) have attended at least one (1) meeting out of each quarter of the calendar year and the quarter immediately preceding nominations for office unless prevented by personal illness, International or District or Local Lodge duties, regular employment or some other unavoidable situation." (Article XXVIII, p. 111)

To hold that such a regulation is unreasonable would hold in effect that there can be no attendance requirement whatever in this union. I find the regulations as adopted at the International Convention to be reasonable in all respects. With regard to plaintiff's contention that the Amendments to the Constitution were not read at the meetings nor made available to him and certain other members, the evidence is to the contrary. In the first place, in order to conform the Local 636 By-laws to the Amended Constitution, it would be necessary that they be in turn amended. The changes in the Local By-laws were considered at three meetings in the Fall of 1961. Some of plaintiff's witnesses attended these meetings but plaintiff was not clear as to whether he did attend any more than one of the meetings. The new by-laws of Local 636 when adopted were passed among the members and Article 5 thereof referred to Article XXVIII of the International Constitution. This court seriously doubts whether any member can be heard to complain of lack of knowledge of his organization's rules, Constitution and by-laws when he is under notice that they have been adopted and available in written form and makes no effort to secure a copy. The evidence showed that from time to time while at work in the factory, requests were made of officers as to the contents and whereabouts of the by-laws. It is not believed that union officers are required to carry copies of the Constitution and by-laws in their working apparel for other members during working hours. The President's testimony was uncontradicted by anyone. That testimony is that the 400 copies of the International Constitution were received and made available and are still available to members in the union office. This court accepts that testimony and finds it to be the fact. The conclusion on this phase of the case therefore is that the Amendment regarding the attendance requirement is reasonable and that the members had notice of it or the means of notice and that plaintiff cannot complain in this court of want of notice of the amendment to the International Constitution. Plaintiff has failed to make out a case for relief under Sections 411 and 412.

▆ Also, it is believed to be the law under the Statute that a union member in seeking a remedy for denial of his alleged right to be nominated for a union

office must proceed under Section 481, Elections, and not under the Bill of Rights Section of the Statute. See Nicholas Manula v. United Steelworkers of America, 304 F.2d 108 (3 Cir. 1962) and other cases cited therein.

This court has not overlooked defendant's motion to dismiss. However, the motion is founded upon the failure of plaintiff to exhaust remedies within the organization. The claim for relief will be denied and the complaint dismissed, but for the reasons herein stated, which may be summarized by stating that plaintiff has been deprived of no rights given him under the Labor-Management Reporting and Disclosure Act, 29 U.S.C.A.

This Opinion is regarded as embracing the Findings of Fact and Conclusions of Law as permitted by Rule 52 of the Federal Rules of Civil Procedure.