Peter J. BRENNAN, Secretary of Labor, United States Department of Labor [successor to James D. Hodgson, resigned], Plaintiff,

v.

LOCAL 3911, UNITED STEELWORKERS OF AMERICA, AFL–CIO, Defendants.

No. 71 C 74.

United States District Court,
N. D. Illinois, E. D.
March 16, 1973.

James R. Thompson, U. S. Atty., Beverly B. Lord, U. S. Dept. of Labor, Chicago, Ill., for plaintiff.

Gilbert Feldman, Kleiman, Cornfield & Feldman, Chicago, Ill., for defendants.

## MEMORANDUM OF DECISION

TONE, District Judge.

This action was instituted by the Secretary of Labor under Title IV of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 401 et seq. In his original complaint the Secretary sought a judgment declaring the election of local union officers conducted by defendant on June 2, 1970 to be null and void and directing that a new election be conducted for all officers of the local under the supervision of the Secretary of Labor.

The issues raised by the pleadings with respect to secrecy of the ballot and inadequacy of safeguards during the election were resolved prior to trial by the agreement of the parties that the defendant will conduct its May 1973 nominations and June 1973 election of local officers under the supervision of the Secretary of Labor. The issues tried related to the validity of the following requirement contained in Article VII, Section 9 of the Constitution of the International Union:

> "No member shall be eligible for election as a Local Union officer or Grievance Committeeman unless . . . he has attended at least one-half (½) of the regular meetings of his Local Union for thirty-six (36) months previous to the June 1970 election, unless his Union activities or working hours prevented his attendance."

Article I of the Constitution of the International makes that document also the constitution of each local union. Substantially the same meeting attendance requirement is repeated in the International Union Elections Manual and in Article IV, Section 5 of the by-laws of the local union.

The statutory standard under which the validity of these provisions is to be tested is Section 401(e) of the Act (29 U.S.C. § 481(e)), which provides in pertinent part as follows:

> "In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject . . . to reasonable qualifications uniformly imposed). . . ."

It is a prerequisite to the Secretary's challenge to the meeting attendance requirement in this action that the challenge be made in a complaint filed with the Secretary by "A member of a labor organization . . . who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body. . . ." Section 402(a) of the Act, 29 U.S.C. § 482(a). The Supreme Court has expressly held that before the validity of the Steelworkers meeting attendance rule can be challenged by the Secretary, union remedies for challenging the rule must be exhausted. Hodgson v. Local

Union 6799, United Steelworkers of America, AFL–CIO, 403 U.S. 333, 91 S. Ct. 1841, 29 L.Ed.2d 510 (1971). Accordingly it is necessary to decide first whether the meeting attendance rule was challenged under union protest procedures.

Plaintiff contends that a protest raising the issue of the validity of the meeting attendance rule was made by Lewis Henderson, who was a member of the defendant local at the time of the challenged election and a candidate for the office of local union president in that election, and that his protest satisfied the requirements of Section 402(a) of the Act and Hodgson v. Local Union 6799, *supra,* 403 U.S. 333, 91 S.Ct. 1841.

The first opportunity to make protests occurred at the local union meeting held on July 12, 1970. Although the first regular meeting held following the election was on June 7, 1970, it was the long standing custom in the local, followed in this instance, for the Election Committee to make its report at the July meeting. Prior to the July meeting, a written protest containing 21 charges of violation was prepared by Henderson and signed by him and a number of other union members. The validity of the meeting attendance requirement was not challenged in any of the 21 charges. On the contrary, charge No. 3 read as follows:

"Candidates were nominated and elected, who did not have 18 meetings. Names were either forged, alterations were made, or tampered with the local union attendance book in violation of Art. 7, Sec. 9, of the International Constitution."

Henderson testified that he omitted the meeting attendance challenge from the protest because some members who signed the protest were not in agreement with that challenge. Another witness testified that the meeting attendance challenge was omitted because the meeting attendance rule was being challenged in another case pending somewhere else and it was thought that the decision in that case would ultimately be applied here. Henderson said that he left the meeting attendance point out intending to raise it orally at the meeting.

The testimony is in conflict concerning what happened at the July 12, 1970 meeting. Witnesses called by plaintiff testified that the Election Committee report was read and adopted without providing any opportunity for the presentation of protests. It is clear that the 21-point written protest was delivered to the recording secretary prior to the meeting and, after the approval of the Election Committee's report by the membership, was read out to the membership. Samuel Clay, president of the local and presiding officer at the meeting, testified that after the reading of the Election Committee report he called for questions on the report and there were several such questions but that while this was going on signatures on the written protest were being obtained outside the union hall and the written protest was not brought into the meeting and presented until after those at the meeting had voted on the Election Committee report and approved it. Clay says he ruled the protest out of order because it should have been presented at the time of the teller's report. He took a division of the house, which supported the chair. He then allowed the reading of the protest anyway. He testified that no one attempted to question the validity of the meeting attendance rule during the meeting. Several witnesses testified that when Henderson attempted to speak he was shouted down by the membership at the meeting. It is clear that, whatever the reason, the meeting ultimately erupted into disorder without an opportunity for Henderson to make any oral protest.

It appears from the evidence that Henderson did not have an adequate opportunity to make any oral protest at the July 1970 meeting of Local 3911. It must have been apparent to the presiding officer that members were on the premises who wished to submit protests, and the meeting should have been con-

ducted in such a manner that protests could be heard. The union's constitution required as much. Accordingly, Henderson could properly have protested in the appeal before the International Commission even though he had not done so at the local meeting, in view of the failure to provide him an opportunity for oral protests at the local meeting.

An appeal was taken by forwarding the 21-point written protest to the secretary-treasurer of the International Union. This was done, not by Henderson but by Jerry Emert, one of the proponents of the protest, who was also a candidate for local union president in the election. Emert transmitted the written protest with his letter of July 15, 1970, in which he made the additional charges that at the July 12th meeting the president failed to follow Election Manual procedure by not letting the recording secretary read the written protest until the new officers had taken the oath of office and then only after an argument; and that the president of the meeting interrupted one member speaking on the subject of the election protest and told him to "sit down and shut up" and threatened him with physical violence unless he did as ordered. Nothing was said in Emert's letter about the meeting attendance requirement, and Henderson did not write a letter to the International Union's secretary-treasurer.

The International Executive Board appointed a two-man commission to hear the protest. The commission, consisting of John Stapay and Edward Sadlowski, both members of the International Union's field staff employed in a subdistrict other than the one in which the defendant local is situated, held a hearing on August 18, 1970. At the outset of the hearing the commissioners announced that they would consider only the written charges which had been presented, consisting of the 21 charges contained in the written protest Henderson had prepared and the two additional charges contained in Emert's letter of July 15th to the International's secretary-treasurer. The Commissioners then proceeded to hold an extensive hearing in which they took up each of the 23 charges.

Both Stapay and Sadlowski testified at the trial that no one attempted to raise the issue of the validity of the meeting attendance requirement at the August 18th meeting. Henderson, they said, did attempt to introduce matters other than the 23 written charges but he made no reference to the meeting attendance rule. Both commissioners took notes at the hearing, and there is no reference in those notes, which are in evidence, to any discussion concerning the validity of the meeting attendance rule. It does appear from those notes and from the formal report of the commission that there was an extensive discussion about charge No. 3, quoted above. That charge was based upon the alleged failure of the local union to observe the requirements of the meeting attendance rule. The commission's action with respect to charge No. 3 was to sustain the charge and recommend that the election for recording secretary be set aside, that Robert L. Davis who had been declared the winner be disqualified and removed from office and that the remaining candidate, Roel Salinas, be installed in the office; and that the election for financial secretary be set aside, that the candidate who had been declared the winner, David Blanco, be disqualified and removed from office and a new election be ordered between candidates Walter Ingram and Andrew Foster.

Henderson and two other witnesses testified that Henderson attempted to raise the issue of the validity of the meeting attendance requirement orally at the hearing before the commission on August 18, 1970. Samuel Clay stated that there was no mention of the union attendance requirement at that hearing. Henderson testified that he attempted to challenge the meeting attendance requirement when charge No. 3 was being discussed. It is difficult to credit this testimony in view of the fact that Henderson was a proponent of charge No. 3 and that charge was predicated upon the

meeting attendance rule. I am inclined to credit the recollection of the commissioners and Clay that there was no discussion at the meeting of the union attendance rule, especially in view of the absence of any reference to the rule in the commissioners' notes of the meeting.

Even if the point had been raised, however, it is clear that the commissioners would not have considered it. They announced at the outset of the hearing that they would consider only the charges submitted in writing, and it appears that this was the custom of the union in considering election contest appeals, although the union's constitution and Election Manual are silent on this point. In subsequent union review proceedings there appears to have been no opportunity for the presentation of oral protests.

I believe that Henderson did not attempt to challenge the meeting attendance rule. A successful challenge to that rule would have defeated charge No. 3, which Henderson and the other protestants made in writing and succeeded in having sustained. There was simply no room for charge No. 3 and a challenge to the meeting attendance rule in the same protest. A protestant could hardly ask the reviewing authority to act on the basis of a provision which he claimed was invalid. We are not dealing with election of remedies or choosing between alternative arguments to obtain the same result. Rather we are concerned with an attempt by the protestants to obtain a result which would have been precluded by acceptance of the challenge Henderson claims to have made. Under the circumstances present in this case it would have been incongruous and against common sense for Henderson to have argued that the meeting attendance rule was invalid, and I do not believe that at the time of the protests before the union hearing bodies he made any attempt to do so. Even as late as the convention of the International Union in Atlantic City, Henderson was passing out handbills in which the local union's failure to observe the requirements of the meeting attendance

rule was criticized. (Def. Ex. 1.) His challenge to that rule appears to have been an afterthought.

■ The difficulty in resolving the exhaustion of remedies issue arises from these circumstances: For the reasons I have stated about, I do not believe Henderson made any effort to challenge the meeting attendance rule in the intra-union proceedings. If he had made such an effort, however, it is inferable that he would have been prevented from making an oral challenge to the meeting attendance rule, since he was not permitted to make any oral challenge at all, and he may not have known that it was necessary under the union's procedures to submit the challenge in writing for purposes of the intra-union appeal. Yet I cannot find that intra-union remedies were exhausted under the circumstances of this case when I am not persuaded that any attempt was made to exhaust them.

■ The finding that the protestants did not exhaust their intra-union remedies as required by Section 402(a) and the *Local 6799* decision would dispose of my responsibility in the case if it were not for the possibility that a reviewing court may reach a different result on the exhaustion issue. That possibility makes it appropriate for me to express my opinion on the validity of the meeting attendance rule.

Four district courts have found the Steelworkers meeting attendance rule to be reasonable. Schultz v. Local Union 6799, 60 L.C. No. 10,261 (C.D.Col.1969) (in which neither the Ninth Circuit, 62 L.C. No. 10,904, nor the Supreme Court, 403 U.S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510, reached the question of the reasonableness of the requirement); Schultz v. Local 1299, 73 LRRM 2673 (E.D.Mich. 1970); Schultz v. Local 1150, 75 LRRM 2869 (S.D.Ind.1970), and Hodgson v. Local 5724, unreported (S.D.Ohio 1972). The defendant union argues with some force that the requirement encourages broad based participation in the affairs of the union, assures that the candidates who are elected have demonstrated at

least minimal interest and concern with local union affairs, and tends to produce officers who through their participation in local union affairs have some familiarity with the responsibilities and duties attendant upon holding union office, including responsibilities and duties imposed upon them by the Management Reporting and Disclosure Act of 1959 itself.

In times past, the Department of Labor apparently has been impressed with the soundness of these reasons. The Department has considered it reasonable under ordinary circumstances for a union to require attendance at 50 per cent of the past twelve or the past twenty four regular meetings. (U.S. Department of Labor, LMRDA Interpretative Manual pars. 422.205 and 422.206, Stip. Ex. Y.) It has regarded a requirement of attendance at 75 percent of recent meetings combined with a strict rule on excused absences as unreasonable. (Id., par. 422.208.) Requirements of participation in union affairs have been viewed as reasonable. (Id., par. 422.250.) And in 1966 the Department took the position in statements to members of the Congress that the test should not be how many members have actually attended meetings "as long as the requirement itself could be reasonably met by all members and was uniformly applied." * (Stip. Ex. V and W.)

Thus a strong argument for the reasonableness of the challenged meeting attendance requirement can be constructed from previous official statements of the Department of Labor. More recently, however, the Supreme Court has taken a position different from that stated by the Department in 1966 with respect to the significance of the impact of the restriction of the number of union members who are eligible for office. In Wirtz v. Hotel, Motel and Club Employees Union, Local 6, 391 U.S.

492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968), the Court dealt with the reasonableness of a requirement that a member who sought a major elective office in a local union must have previously held an elective office in the local. The Court observed that the words "reasonable qualifications uniformly imposed" of Section 401(e) should not be given a broad reach in view of the legislative history, the statutory declaration that "every member in good standing shall be eligible to be a candidate and to hold office," and "other provisions of the Act which stress freedom of members to nominate candidates for office." (391 U.S. at 499, 88 S.Ct. at 1748.) The Court analyzed the impact of the challenged requirement and concluded:

"Plainly, given the objective of Title IV, a candidacy limitation which renders 93% of union members ineligible for office can hardly be a 'reasonable qualification.'" (391 U.S. at 502, 88 S.Ct. at 1749.)

The union's argument that the requirement was needed to assure that members who sought office had acquired familiarity with local problems was rejected in light of the assumption inherent in our political system, which was Congress' model in framing the Act, that voters can be trusted to exercise common sense and judgment on the qualifications of candidates. (391 U.S. at 504, 88 S.Ct. 1743.)

In the case at bar the local union had 1900 members at the time of the election. The average attendance at regular local meetings during the three years in question was 76. A Department of Labor compliance officer who had studied the records of Local 3911 and prepared some statistics on attendance at meetings and related matters testified at the trial that he estimated that approximately 100 members of Local 3911 would

---

* Although in this case the local union's attendance records were tainted with some irregularities, and the attendance records did not show when attendance was excused due to working hours and the working hours excuse had to be presented and documented by a candidate who sought to qualify, I am un-able to say that the meeting attendance requirement was not uniformly imposed. The candidates who profited from the irregularities were disqualified in the intra-union appeal, and candidates who proved the working hours excuse were given credits for meetings missed because they had to work.

have been eligible to run for office. If this estimate is correct, and it seems reasonable and has not been challenged, 94.7 percent of the local union's members were ineligible for office.

If, "given the objective of Title IV, a candidacy limitation which renders 93% of union members ineligible for office can hardly be a 'reasonable qualification'" (Wirtz v. Hotel, Motel and Club Employees Union, Local 6, *supra*, 391 U.S. at 502, 88 S.Ct. at 1749), then one which renders 94.7% of union members ineligible can hardly be a reasonable qualification. It seems apparent that the Supreme Court would not regard the Steelworkers meeting attendance requirement in its present form as a reasonable qualification. If I had been able to find on this record that intra-union remedies were exhausted, I would have been compelled to find that the 36-month meeting attendance rule is invalid under the standard stated in Wirtz v. Hotel, Motel and Club Employees Union, Local 6, 391 U.S. 492, 502, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968).

Judgment will be entered in favor of the defendant.