Peter J. BRENNAN, Secretary of Labor, Plaintiff-Appellant,

v.

LOCAL 3489, UNITED STEELWORKERS OF AMERICA, AFL–CIO, and United Steelworkers of America, AFL–CIO, Defendants-Appellees.

No. 74–1639.

United States Court of Appeals, Seventh Circuit.

Heard April 3, 1975.

Decided Aug. 5, 1975.

Stanley B. Miller, U. S. Atty., Indianapolis, Ind., Carla A. Hills, Asst. Atty. Gen., Eloise E. Davies, Atty., Appellate Section, Civil Div., Dept. of Justice, Washington, D. C., for plaintiff-appellant.

A. E. Lawson, Pittsburgh, Pa., James A. Goodin, Jr., Indianapolis, Ind., for defendants-appellees.

Before CUMMINGS and PELL, Circuit Judges, and PERRY, Senior District Judge.*

CUMMINGS, Circuit Judge.

The Secretary of Labor filed this action for declaratory and injunctive relief pursuant to Title IV of the Labor Management Reporting and Disclosure Act ("Act" or "LMRDA"), 29 U.S.C. § 481 *et seq.* The complaint alleged that a June 22, 1970, election of officers of defendant union[1] was void because the union had failed to elect its officers by secret ballot and had imposed an unreasonable candidacy qualification, thus violating Sections 401(b) and 401(e) of the Act.[2] The district judge disagreed and dismissed the complaint. We reverse.

The membership of the Union is composed of the production and maintenance employees of the Stran Steel Corporation of Terre Haute, Indiana. At the time of the election, there were 660 members in good standing eligible to vote. However, pursuant to rules of the Local Union and its parent, the following requirements were established for eligibility for office in the Local:

1. Membership in good standing for 24 months immediately preceding the election;

2. Employment in a place within the jurisdiction of the Local Union;

3. Attendance at least at 18 of the 36 regular monthly meetings preceding the election unless union activities or working hours prevented attendance.

The third requirement was dictated by the following provision of the International Union's constitution:

"In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 of this title and to reasonable qualifications uniformly imposed) and shall have the right to vote for or otherwise support the candidate or candidates of his choice, without being subject to penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof."

---

* Senior District Judge J. Sam Perry of the Northern District of Illinois was sitting by designation.

1. Local 3489, United Steelworkers of America, AFL–CIO. Subsequently the parent international union, United Steelworkers of America, AFL–CIO, intervened as an additional defendant.

2. Section 401(b) (29 U.S.C. § 481(b)) provides:

"Every local labor organization shall elect its officers not less often than once every three years by secret ballot among the members in good standing."

In pertinent part, Section 401(e) (29 U.S.C. § 481(e)) provides:

"No member shall be eligible for election as a Local Union Officer or Grievance Committeeman unless

\* \* \* \* \* \*

"He has attended at least one-half (½) of the regular meetings of his Local Union for thirty-six (36) months previous to the \* \* \* election unless his Union activities or working hours prevented his attendance." (Article VII, Sec. 9.)

From June 1967 to May 1970, the Local Union conducted 36 monthly meetings, with an average attendance of 47 members per meeting. As a result of the meeting attendance rule, 96.5% of the Local Union's membership was ineligible to hold office. Ten of the 23 members who were found eligible were incumbent office holders. Following the May 17, 1970, nomination meeting, two of the nominees were informed that they were ineligible for union office because they had attended an insufficient number of union meetings. Ultimately, there were only 13 candidates on the ballot running for ten offices and six of these candidates ran unopposed.

■ After the June 22, 1970, election of officers, Bernard Frye,[3] a defeated candidate for the presidency, filed a protest with the Local Union, claiming that the meeting attendance rule was unreasonable and that the vote had not been by secret ballot. The Union denied his protest and he appealed to the International Union's Executive Board. Be-

cause his protest was not acted upon by the Executive Board within three months (29 U.S.C. § 482(a)(2)), Frye filed a written complaint with the Secretary of Labor, prompting the present litigation.

The district court filed an unreported memorandum opinion in favor of defendants. In its opinion, the court stated:

"The meeting attendance qualification \* \* \* is designed to (1) insure that candidates have demonstrated an interest in union affairs prior to election and are therefore likely to continue to do so, if elected, and (2) that candidates will, if elected, be able to more knowledgeably fulfill their duties."

Therefore, the court concluded that the meeting attendance rule was a reasonable qualification within the meaning of Section 401(e) of the Act (note 2, *supra*). The court also held that the Union's failure to provide voting booths or other means of insuring secrecy during the voting did not violate Section 401(b) of the Act (*idem*), emphasizing that "the evidence did not indicate that the lack of a voting booth [subsequently acquired by the local union] or similar apparatus for secret voting may have affected the outcome of the election."

*Reasonableness of Attendance Requirement*

■ As noted, a member of the defendant union is not eligible for election to office unless he has attended 18 of the

**3.** Frye was ultimately elected president of the Local Union on June 12, 1973, and at the time of the filing of the briefs here was serving in that capacity. Although neither party has raised the question of mootness on appeal or in the court below, the mere recitation of the fact that the complainant as to the 1970 election eventually won the office which he sought then and is now serving in that capacity is sufficiently suggestive of mootness problems to merit a brief discussion by this Court.

In *Wirtz v. Local 153, Glass Bottle Blowers Ass'n,* 389 U.S. 463, 88 S.Ct. 643, 19 L.Ed.2d 705 the Supreme Court held that where the Secretary of Labor has proved a Section 401 violation that may have affected the outcome of an election, an intervening unsupervised election for the same offices does not deprive the Secretary of the right to a court order

voiding the challenged election and directing that a new election be held under his supervision. There appears to be no substantial reason for distinguishing this case on the grounds that the complainant himself has secured the office in the second election that he sought in the challenged election. Thus if the June 12, 1973, election was unsupervised, this case is on all fours with *Glass Bottle Blowers* and clearly not moot. Our review of the transcript of the hearing below leads us to believe that the Secretary did not supervise the June 12, 1973, election. It is therefore unnecessary to decide whether this case would be moot if a supervised election had been held since the challenged election. See *Brennan v. Silvergate District Lodge No. 50,* 503 F.2d 800, 803–804 (9th Cir. 1974).

36 regular monthly meetings preceding the election, unless union activities or working hours prevented attendance. This requirement must be tested in light of Section 401(e) of the Act, which makes "every member in good standing" eligible for office, subject to Section 504 of the Act "and to reasonable qualifications uniformly imposed." Section 504 prohibits members of the Communist Party and persons convicted of certain crimes from holding office unless certain conditions are met (29 U.S.C. § 504). This provision is not involved in this appeal. Further narrowing the issue, the Secretary does not seriously contend that the 18 of 36 rule was not uniformly applied. Thus the question before us is whether the meeting attendance rule is a reasonable qualification. We hold that it is not.

The construction of Section 401(e) was also before us in *Brennan v. Independent Lift Truck Builders Union,* 490 F.2d 213, 217 (7th Cir. 1974). Applying the admonition in *Wirtz v. Hotel, Motel & Club Employees Union, Local 6,* 391 U.S. 492, 499, 88 S.Ct. 1743, 1748, 20 L.Ed.2d 763, that "Congress plainly did not intend that the authorization in § 401(e) of 'reasonable qualifications uniformly imposed' should be given a broad reach," we held that it would not be a reasonable qualification to bar a member from eligibility for office where he was discharged by an employer and was actively contesting the discharge.

In *Hotel Employees,* the Supreme Court struck down a union by-law which required major office-holders to be selected from members who had previously been office-holders. To support this conclusion, the Court relied on the legislative history of Section 401(e) and its wording that "every member in good

standing shall be eligible to be a candidate and to hold office * * *." In so ruling, the Court stated:

"This conclusion is buttressed by other provisions of the Act which stress freedom of members to nominate candidates for office. Unduly restrictive candidacy qualifications can result in the abuses of entrenched leadership that the LMRDA was expressly enacted to curb. The check of democratic elections as a preventive measure is seriously impaired by candidacy qualifications which substantially deplete the ranks of those who might run in opposition to incumbents." 391 U.S. at 499, 88 S.Ct. at 1748.[4]

Later in the *Hotel Employees* opinion, Justice Brennan observed that because the objective of Title IV of the Act (29 U.S.C. §§ 481–483) is to insure free and democratic elections, it was plain that a candidacy limitation rendering 93% of union members ineligible for office "can hardly be a reasonable qualification." 391 U.S. at 502, 88 S.Ct. at 1749. Here the meeting attendance rule disqualified 96.5%[5] of the Local Union's membership from office, so that it cannot be deemed a reasonable qualification either. We need not decide whether the 18 of 36 rule is *per se* unreasonable because its effect of severely restricting the number of potential candidates for union office shows it to be clearly unreasonable in this case. Furthermore, we note that of the 23 persons found to be eligible for office in the 660-person Local, ten were incumbent office-holders. Since Section 401(e) was intended to curb the possibility of abuse by an entrenched leadership, whether benevolent or not,[6] a restriction that results in almost half of those eligible to be candidates in a local of this size

---

**4.** Note 8 has been omitted from the foregoing quotation; it cited 29 U.S.C. §§ 481(e) and 411(a)(1) as provisions stressing members' freedom to nominate candidates.

**5.** Of the Union's 660 members, one member was found eligible by a combination of meet-

ing attendance and work credits, and 22 members were eligible by virtue of meeting attendance alone. This resulted in disqualifying 96.5% of the membership at this election.

**6.** *Hotel Employees, supra,* at 503, 88 S.Ct. 1743.

also being incumbent office-holders is surely suspect.

No particular percentage is accorded talismanic properties under the Act, so that the courts need not hold a union rule or combination of rules that fails to qualify such an arbitrary percentage of members as potential candidates *per se* unreasonable. Rather, the entire fact situation surrounding the election is to be examined in making the reasonableness determination. See 29 C.F.R. § 452.38 (1974). Of course, if a very high percentage of the membership is disqualified from seeking union office by a rule, as was the situation here, that fact alone may justify a finding that the rule is unreasonable. As stated by Judge Tone in *Brennan v. Local 3911, United Steelworkers of America,* 372 F.Supp. 961, 967 (N.D.Ill.1973), in view of its decision in *Hotel Employees,* "It seems apparent that the Supreme Court would not regard the Steelworkers meeting attendance requirement in its present form as a reasonable qualification." [7]

As the district court recognized, the LMRDA "was expressly enacted to curb the abuses of entrenched leadership." The defendants' meeting attendance rule

perpetuates that abuse on the facts of this case. Because of the rule, members of the defendant Local who wish to run against incumbent officers might have to plan their campaigns 18 months ahead of the triennial elections in order to acquire 18 attendance credits. The need for such long-range planning would help to keep incumbent leaders in office. Unions undoubtedly have members with the requisite skills to hold office who have been sufficiently content with the directions taken by the union leadership for a time so that they felt no need to participate in routine meetings. Yet the 18 of 36 rule could prevent such members from becoming candidates even where they had been attending all the meetings and actively opposing the policies of the incumbent officers for over a year. Moreover, new members can qualify as members in good standing after two years. However, in order to challenge incumbents, they would have to attend 18 out of 24 mmetings in those two years. Again this requirement favors incumbents.

Defendants argue that the Secretary's position contradicts a provision in his manual on the Act.[8] The short answer is that the manual is now obsolete. See

---

**7.** In *Local 3911,* Judge Tone rendered judgment for defendant union because the plaintiff had not fulfilled the statutory intra-union exhaustion requirements. Because of the possibility of reversal by a reviewing court, the then district judge indicated how he would have ruled had he reached the merits. Finding the Supreme Court's *Hotel Employees* decision controlling, he held that the disqualification of 94.7% of the membership due to the 18 of 36 rule proved the rule unreasonable under Section 401(e). 372 F.Supp. at 967.

This facet of the decision in *Local 3911* was cited with approval in *Brennan v. Local Union No. 639, International Brotherhood of Teamsters,* 161 U.S.App.D.C. 173, 494 F.2d 1092, 1099–1100 (1974), where the Court of Appeals for the District of Columbia affirmed the ruling of the district court that a meeting attendance requirement, which disqualified 97% of the membership from potential candidacy, could not be applied in a coming election. The court noted, but did not follow, the contrary view expressed in *Brennan v. Local 5724, United Steelworkers of America,* 489 F.2d 884 (6th Cir. 1973). Likewise, to the extent that *Local*

*5724* is inconsistent with our decision here (in *Local 5724* only 84.8% were disqualified by the 18 of 36 rule), we respectfully disagree with the Sixth Circuit. *Wirtz v. Local 153, Glass Bottle Blowers Ass'n,* 405 F.2d 176 (3d Cir. 1968), on remand from the Supreme Court, 389 U.S. 463, 88 S.Ct. 643, 19 L.Ed.2d 705, also appears to be in conflict with the Sixth Circuit, although in *Local 153* the facts involved a 75% attendance requirement over two years that disqualified 97% of the union membership, so that it might be distinguished on both the face of the rule and its practical effect from *Local 5724.*

**8.** LMRDA Interpretive Manual § 422.250, which provided:

"PARTICIPATION IN UNION AFFAIRS"

"Qualifications reasonably designed to assure that candidates have participated in the affairs of the union and are sufficiently familiar with the industry in which the union operates would not be considered unreasonable in ordinary circumstances, if uniformly imposed. In the absence of knowledge of any special circumstances which cast doubt

29 C.F.R. § 452.38 (1974). In any event, the meeting attendance rule at issue here disqualified a very high percentage of the membership from holding office, thus constituting "special circumstances which cast doubt upon the validity and reasonableness" of the rule within the guideline expressed in that manual.

Defendants also rely upon Section 422.206 of the same obsolete manual which provided that a two-year-50% meeting attendance requirement was not unreasonable. The Secretary has explicitly abandoned this position in a new regulation which provides that the reasonableness of a meeting attendance rule must be determined "in the light of all the circumstances of the particular case, including * * .* the number or percentage of members who would be rendered ineligible by its application." 29 C.F.R. § 452.38 (1974).[9] This regulation therefore reinforces the Secretary's policy typified by the filing of this lawsuit. Moreover, since the three-year rule can be 50% harsher as to the number of meetings which a member must attend to qualify for office and as to the time limitations imposed on his decision to seek office, the reasonableness of the two-year rule does not determine the reasonableness of the three-year rule.

As in *Hotel Employees,* defendants attempt to defend their restriction by various arguments in its favor. Thus they assert that they are attempting to insure that candidates have demonstrated an interest and concern in union problems and would be sufficiently familiar with them to fulfill the duties of office. Similar arguments were rejected in *Hotel Employees* where the Court noted that Congress designed Title IV "to curb the possibility of abuse by benevolent as well as malevolent entrenched leadership" (391 U.S. at 503, 88 S.Ct. at 1750). Defendants also assert that the meeting attendance rule fosters large turnouts at union meetings. However, according to the stipulation below, the average meet-

ing attendance of this Union was 47 members out of 660. Such an attendance record would certainly not justify disqualifying 96.5% of members from holding office.

In the court below, the Secretary showed that only one other national union has specified a three-year period during which a member must attend a specified number of meetings to qualify for candidacy. Surely this statistic belies defendants' claim that the rule in question is necessary to assure competent union leadership. The right of members to nominate and vote for candidates of their choice (29 U.S.C. §§ 411(a)(1) and 401(e)) would be seriously diluted if this rule were to be sanctioned. In our view, it is not a "reasonable qualification" for office under Section 401(e) of the Act.

*Maintenance of Secret Ballot*

The Secretary also argues that this election should be set aside and a new supervised election ordered under Section 402(c) of the Act (29 U.S.C. § 482(c)) on the additional ground that this Local Union failed to elect its officers by secret ballot in violation of Section 401(b) of the Act (note 2, *supra* ). As defined in Section 3(k) of the Act:

" 'Secret ballot' means the expression by ballot, voting machine, or otherwise, but in no event by proxy, of a choice with respect to any election * * * which is cast in such a manner that the person expressing such choice *cannot* be identified with the choice expressed." (Emphasis added. 29 U.S.C. § 402(k).)

Under these statutory provisions, unions must run elections that conform to the democratic principles embodied in the secret ballot mandate. *Wirtz v. Local 153, Glass Bottle Blowers Ass'n, supra* note 1, 389 U.S. at 471–472, 88 S.Ct. 643.

This election was conducted in a 60' x 20' room. Several small adjacent rooms were not used, although available. A small table for marking ballots was

---

upon the validity and reasonableness of any of the qualifications they are not to be considered unreasonable in themselves."

**9.** Subparagraph (b) of the same regulation summarizes several court decisions holding particular meeting attendance requirements to be unreasonable.

placed three feet in front of an elevated officers' bench. Two members of the Election Committee were present throughout the 6:00 a. m. to 6:00 p. m. election. Most of the voting occurred during the last two hours of the day, when the voters were "jammed together * * * elbow to elbow." Up to 50 voters were in the room at one time. Many voters marked their ballots at the aforesaid table and could see each other's ballots as they were marked. Others marked their ballots against the walls, and their markings could also be observed by voters several feet away. No one was seen carrying a ballot to the back of the hall to vote, and some members deliberately "flaunted their votes." There was no encouragement of any members to take steps to prevent others from seeing their ballots. Such loose polling procedures violate the secret ballot requirement of the Act. *Hodgson v. United Mine Workers of Amberica,* 344 F.Supp. 17, 30 (D.D.C.1972). There was no observation of the requirement of Section 3(k) that votes be cast in such a manner that "the person expressing [his] choice cannot be identified with the choice expressed."

■ Defendants claim that the Secretary's position with respect to ballot secrecy is inconsistent with his regulation on the subject. 29 C.F.R. § 452.97(a) (1774) provides:

"A prime requisite of elections regulated by Title IV is that they be held by secret ballot among the members or in appropriate cases by representatives who themselves have been elected by secret ballot among the members. A secret ballot under the Act is 'the expression by ballot, voting machine, or otherwise, but in no event by proxy, of a choice * * * cast in such a manner that the person expressing such choice cannot be identified with the choice expressed.' [Quoting 29 U.S.C. § 402(k).] Secrecy may be assured by the use of voting machines or, if paper ballots are used, by providing voting booths, partitions, or other physical arrangements permitting privacy for the voter while he is making his ballot. The ballot must not contain any marking which upon examination would enable one to identify it with the voter. Balloting by mail presents special problems in assuring secrecy. Although no particular method of assuring such secrecy is prescribed, secrecy may be assured by the use of a double envelope system for return of the voted ballots with the necessary voter identification appearing only on the outer envelope."

On analysis, it is apparent that under this regulation a voting booth "or other physical arrangements permitting privacy for the voter" may be used to assure the secrecy of the ballot, but secrecy must be assured. Since the use of the secret ballot is mandatory and not optional, the arrangements for voting at the June 1970 election satisfy neither the statute nor the regulation.

Defendants' argument that every voter had an opportunity to make his ballot secret by going to an unpopulated area within the large room or to one of the small rooms or by guarding his vote from observation must fail. But see *Shultz v. Local 420, Aluminum Workers,* 74 LRRM 2281 (N.D.N.Y.1970). The statutory mandate is for a vote that "cannot" be identified with the voter. In many cases, requiring a union member to make a great show of securing his secrecy may be tantamount to indicating his vote. The Act requires a mandatory secret ballot, not one permitting a voter to mark his ballot in secret with the danger of identification implicit in securing that secrecy.

In rejecting the Secretary's claim that the secret ballot requirment of the Act had not been observed, the district judge was especially motivated by the fact that "the evidence did not indicate that the lack of a voting booth or similar apparatus for secret voting may have affected the outcome of the election." [10] This

---

**10.** Section 402(c) of the Act requires a new, supervised election if a violation of Section 401 (note 2 *supra*) "may have affected the outcome of an election" (29 U.S.C. § 482(c)).

was contrary to the holding in *Hotel Employees* that once a violation is established by a preponderance of the evidence, a *prima facie* case has been made that the outcome of the election was affected. See 391 U.S. at 505–509, 88 S.Ct. 1743. According to our reading of the record, these defendants did not meet that *prima facie* case.

Fed.R.Civ.P. 52(a) provides that a district court's fact findings cannot be reversed on appeal unless found to be clearly erroneous. While this Court reverses the judgment of the court below, it is not necessary to hold any of the district judge's findings clearly erroneous. The basis for the reversal is legal rather than factual. Thus we accept both the district court's endorsement of the parties' stipulation and the facts as found by the district court after the hearing. We are overturning only the legal conclusions that the candidacy restriction was reasonable and that there ·was a secret ballot within the meaning of the Act.

The order of the district court is reversed with directions to enter judgment for the Secretary.