William J. USERY, Secretary of Labor,
Plaintiff, Appellant,

v.

LOCAL DIVISION 1205, AMALGAMAT-
ED TRANSIT UNION,
Defendant, Appellee.

No. 76–1235.

United States Court of Appeals,
First Circuit.

Argued Sept. 10, 1976.

Decided Nov. 17, 1976.

Eloise E. Davies, Atty., Appellate Section, Civ. Div., Dept. of Justice, Washington, D.C., with whom Rex E. Lee, Asst. Atty. Gen., Washington, D.C., James N. Gabriel, U.S. Atty., Boston, Mass., William J. Kilberg, Sol. of Labor, Beate Bloch, Associate Sol., Jerome J. Davis, Atty., Dept. of Labor, and Robert E. Kopp, Atty., Appellate Section, Civ. Div., Dept. of Justice, Washington, D.C., were on brief, for appellant.

Lawrence E. Katz, Cambridge, Mass., with whom Arthur J. Flamm, and Flamm, Mason, Paven & Feinberg, Boston, Mass., were on brief, for appellee.

Before CLARK, Associate Justice, U.S. Supreme Court (Ret.),* McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

This suit to set aside an election of officers held in June of 1973 by Local 1205 of the Amalgamated Transit Union was brought by the Secretary of Labor under section 402(b) of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 482(b).[1] The Secretary charges the Local with violations of section 401(e) of the LMRDA, first by imposing "an unreasonable meeting attendance qualification for candidacy", and second by unreasonably refusing to accept certain nominations.

■ After the Secretary's complaint was filed in the district court, both parties conducted discovery, and Local 1205 moved for summary judgment, filing an affidavit and brief. Although the Secretary had ample time to do so, he apparently neglected to file a brief in advance of the hearing on the motion; and after argument the court directed entry of judgment for the Local.

The Secretary's failure to file a timely brief in the district court cannot be condoned. The district court was entitled to the cooperation of both parties, and especially of the Secretary, who instituted the suit. The court was under no obligation to perform unaided legal research, nor to accept a brief out of time.

---

* Sitting by designation.

1. Section 402(b) provides:

    "The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this subchapter [Title IV] has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court of the United States in which such labor organization maintains its principal office to set aside the invalid election, if any, and to direct the conduct of an election or hearing and vote upon the removal of officers under the supervision of the Secretary and in accordance with the provisions of this subchapter and such rules and regulations as the Secretary may prescribe. The court shall have power to take such action as it deems proper to preserve the assets of the labor organization."

The Local, however, has not asked us to affirm on the ground of the Secretary's non-cooperation with the district court, nor did the court itself indicate this factor as a reason for its judgment; both sides have briefed and argued the substantive legal issues, and it would now seem to be in the interest of the Local and its members for us to decide these matters even—as it turns out—adversely. We proceed, therefore, to the merits.

The undisputed facts relating to the two claimed violations of the LMRDA are as follows.

### 1. *Disqualification of Klayton for non-attendance.*

In May, 1973, Local 1205 had 338 members made up of 268 active and 70 retired employees of the Greyhound Lines (Eastern Division) and the Bangor and Aroostook Railroad. Most active members worked out of Boston (212). Others held positions based in Bangor (17), Portland (6), Providence (15), Hartford (18) and New Haven (2). Meetings were held monthly in both Boston and Portland; members located elsewhere could bus to the meetings if they desired using free Greyhound pass privileges.

Local 1205 held regular biennial elections. In September, 1971, the Local adopted a bylaw requiring that candidates for office must have attended not less than six regular meetings each year during the twenty-four months prior to an election, such a rule being optional with each local under the International's constitution. The bylaw included a liberal excuse provision by which a member, absent for a legitimate reason, could obtain attendance credit simply by sending a postcard to the recording secretary within ten days after the meeting.

In December, 1972, Local 1205 conducted a special election for financial secretary and member Ronald Klayton was elected.

Klayton had not attended six meetings a year for the preceding twenty-four months, but being the sole nominee was allowed to stand and serve. Six months later, however, when the Local conducted its regular elections, Klayton was not permitted to run for the office because of the attendance requirement. Although he had attended ten meetings in the 1972–73 year, he had gone to only five meetings in 1971–72.[2]

### 2. *Refusal of Willie Higgins' nomination.*

Under the Local's bylaws, nominations of officers take place at the regular May meeting. Nominations may be made by mail if they are received by the recording secretary on or before the day of the nominating meeting. In May, 1973, Willie Higgins and two other members of the Local attended the meeting in Boston with the intention of nominating themselves for office. When the meeting was cancelled for lack of a quorum, Higgins and his companions vainly attempted to submit their nominations in writing to the recording secretary. By letter, Higgins protested to the Local the rejection of these nominations, but his protest was unavailing. He thereupon appealed to the International prior to the election, but the appeal was denied. The election took place in June, 1973, and four days later Higgins challenged it under a provision in the constitution of the International allowing voting members to challenge the conduct or results of an election within 10 days afterwards. Higgins maintained that the refusal to accept the proffered written nominations had been improper. The executive board of the Local denied his appeal as did the International vice president. The general executive board of the International informed Higgins that it would hear his appeal; however, the record is silent on whether or not the issue was

---

**2.** Klayton was eventually elected financial secretary at the 1975 election, held after commencement of this suit. It is not now contended that Klayton's success in 1975 has rendered moot the question of the legality of Klayton's 1973 disqualification for non-attendance.

Seemingly it has not. *See Wirtz v. Local 153, Glass Bottle Blowers,* 389 U.S. 463, 475, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968); *Brennan v. Local 3489, Steelworkers,* 520 F.2d 516, 518 n. 3 (7th Cir. 1975), *cert. granted,* 424 U.S. 907, 96 S.Ct. 1100, 47 L.Ed.2d 311 (1976).

ever taken up by that body. On October 2, 1973, Higgins filed a complaint with the Secretary of Labor challenging the June, 1973, election. That complaint led to this proceeding.

I

■ We first consider the bylaw which caused Klayton to be disqualified as a candidate for office for failure to attend six meetings each year during the twenty-four month period prior to elections. Section 401(e) of the LMRDA provides, in part, that in elections subject to the Act,

". . . [A] reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to . . . reasonable qualifications uniformly imposed) and shall have the right to vote for or otherwise support the candidate or candidates of his choice . . .."

The question here is thus whether the candidacy restriction was a "reasonable qualification". The legislative history and wording of section 401(e) reveal a congressional purpose to ensure open and democratic union elections and to limit candidacy restrictions to those that do not invite abuse, especially by entrenched incumbents. *See Wirtz v. Hotel Employees, Local 6,* 391 U.S. 492, 499, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968); *Wirtz v. Local 153, Glass Bottle Blowers,* 389 U.S. 463, 470–71, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968); Aaron, The Labor-Management Reporting and Disclosure Act of 1959, 73 Harv.L.Rev. 851 (1960). With respect to attendance, a requirement that candidates must have attended 75 percent of all meetings within the preceding two years has been held invalid, *Wirtz v. Local 153, Glass Bottle Blowers,* 405 F.2d 176, 178 (3d Cir.), *on remand from* 389 U.S. 463, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968). But lesser requirements covering, for example, 25 percent of meetings in one year, have been upheld, *e.g., Shultz v. Local 420, Aluminum Workers,* 74 L.R.R.M. 2281 (N.D.N.Y.1970). *See Martin v. Boilermakers, Local 636,* 245 F.Supp. 375 (W.D.Pa.1963) (one meeting per

quarter for each of five quarters). There is presently a split between circuits over a requirement of attendance at 50 percent of meetings over a thirty-six month period. *Brennan v. Local 5724, Steelworkers,* 489 F.2d 884, 888 (6th Cir. 1973) (upholding such a requirement as a "reasonable qualification"); *Brennan v. Local 3489, Steelworkers,* 520 F.2d 516, 520 (7th Cir. 1975), *cert. granted,* 424 U.S. 907, 96 S.Ct. 1100, 47 L.Ed.2d 311 (1976) (disapproving such a requirement). *See also Brennan v. Local 639, Teamsters,* 161 U.S.App.D.C. 173, 494 F.2d 1092, 1098–99 (1974).

The Secretary makes much of the fact that the 50 percent a year, twenty-four month requirement here in issue, disqualifies almost 94 percent of the membership from running, and he compares this figure with the 93 percent disqualified under a different candidacy limitation struck down in *Wirtz v. Hotel Employees, Local 6,* 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968). The Local responds that the present requirement is ameliorated by the liberal excuse provision and free bus privileges and points out that Klayton, the candidate disqualified by the rule, was himself an incumbent, albeit a very recent, and certainly not an "entrenched" one. Apathy rather than the stringency of the requirement is said to be the reason for the high percentage of disqualification. *See Brennan v. Local 5724, supra,* 489 F.2d at 888–89.

■ We do not give conclusive weight here to the fact that nearly 94 percent of the membership did not meet the requirement although this is certainly of importance; the question is not only how many were disqualified but how burdensome was the qualification. We do conclude, however, that a bylaw which has the effect of requiring attendance for a period that must begin no later than eighteen months before a biennial election cannot be squared with Congress' aim to open up union elections and make them democratic thereby combating the likelihood of an entrenched leadership. *See Wirtz v. Local 153, Glass Bottle Blowers, supra,* 405 F.2d at 176 (invalidating a 75 percent requirement that had much

the same practical effect); *Brennan v. Local 3489, Steelworkers, supra,* 520 F.2d at 520 (invalidating 50 percent, thirty-six month requirement that had same effect). At least, such a prolonged attendance requirement places a heavy burden of justification upon the union, a burden that has not been met here.[3]

This is not to say that a union may not restrict candidacy to members who have demonstrated some interest in union affairs and who have had some exposure to the union's problems; but these aims can be satisfied by qualifications capable of being met in a shorter period. By requiring a candidate to, in effect, project his candidacy eighteen months or more in advance, the challenged requirement seems to us to erect too high a barrier under a statute whose purpose is to guarantee union democracy.

■ It is significant, also, that the bylaw goes well beyond the attendance requirement sanctioned in the Secretary's interpretative regulations that were in effect in June of 1973. Section 422.206 of the LMRDA Interpretative Manual then provided that a provision requiring a member "to have attended at least one-half of the regular meetings of his local union for 24 months previous to the election before he may be eligible to hold office, is not unreasonable if it is applied fairly and uniformly to all members."[4] Klayton would have qualified under such a provision (he attend-

ed a total of fifteen meetings in the twenty-four months prior to the election). What disqualified him here was the requirement that six of the twelve required meetings be attended in each of the two years. While the Secretary's interpretive regulations are not binding on courts, they gave currency to the then views of the official charged by Congress with enforcement of the LMRDA, and we think they are entitled to some weight when ascertaining what qualifications are reasonable in gray areas of the Act. *Cf. Stockman v. Clark,* 539 F.2d 264, 269 (1st Cir. 1976). *See generally* 4 Davis, Administrative Law Treatise § 30.09 *et seq.*

We hold that the attendance requirement in question was excessive and unreasonable and that it violated the Act.

## II

■ Section 402(a) of the LMRDA states that a prerequisite to the filing of a civil action by the Secretary is that he receive a complaint from a union member "who has exhausted the remedies available under the [union's] constitution and bylaws". 29 U.S.C. § 482(a)(1). The statute provides that a union member wishing to contest a union election must file his complaint either within one month of a final adverse decision by the union or within four months of his initial invocation of internal remedies. 29 U.S.C. § 482(a)(2).[5]

3. While the Local's liberal postcard "excuse" rule makes the requirement less burdensome, it also tends to undermine the justification for it: if prospective candidates can so easily avoid coming to meetings the bylaw would seem to serve little purpose other than to screen out those who did not make up their minds to run at least a year and a half early.

4. The regulation went on to indicate that such an attendance requirement could "well be unreasonable" in circumstances in which attendance presented an unusual degree of difficulty for a significant proportion of the membership. We need not decide if that was so here, since by requiring attendance at six meetings *each year* the challenged bylaw was significantly more burdensome than that sanctioned by the Secretary.

The Secretary's regulations have since been altered so as to further qualify the *per se* validity of a 50 percent, twenty-four month rule. *See* 29 C.F.R. 452.38(a).

5. Section 402(a) reads as follows:

"(a) A member of a labor organization—

(1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or

(2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation, may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481 of this title (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers). The challenged election shall be presumed valid pending a final decision thereon (as hereinafter provided) and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide."

Higgins filed his complaint on October 2, 1973. The Local contends that he had exhausted his internal remedies for the purposes of section 402(a) on June 1, 1973, prior to the election and at the end of his first round of appeals. Alternatively, the union suggests that even if one were to take the view that there had been no final disposition of Higgins' complaint prior to the elections, he was confined to the four month time period beginning with the original invocation of internal remedies on May 11, 1973. This would have required filing of the complaint by September 11, 1973 at the latest. The Local rejects the Secretary's contention that Higgins' post-election round of challenges should provide the measure by which to determine the timeliness of the complaint to the Secretary. We disagree.

The LMRDA provides that "[e]xisting rights and remedies to enforce the constitution and bylaws of a labor organization with respect to the elections prior to the conduct thereof shall not be affected by [Title IV]. The remedy provided by [Title IV] for challenging an election already conducted shall be exclusive," 29 U.S.C. § 483. The Supreme Court has said that the LMRDA provides for an expeditious, exclusive post-election remedy, *see Calhoon v. Harvey*, 379 U.S. 134, 140, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964); and several district courts have concluded on the basis of the Supreme Court's language in *Harvey* that invocation of pre-election remedies does not place in motion the statutory timetable. *See Wirtz v. H. H. Guy Lodge, No. 873, Railroad Trainmen*, 279 F.Supp. 873, 874 (W.D.Pa.1967); *Wirtz v. Local 30, Operating Engineers*, 242 F.Supp. 631 (S.D.N.Y. 1963), *vacated as moot*, 366 F.2d 438 (2d Cir. 1966).

In contending that the pre-election remedy was decisive here, the Local relies upon *Hodgson v. United Steelworkers*, 459 F.2d 348 (3d Cir. 1972). In that case a union member protested the absence of his name on the ballot for an International election. This appeal, filed with the union prior to

the election as required by the International's constitution, was denied. Following the election, the member again protested his exclusion from the ballot. Almost simultaneously, he was advised by the Department of Labor that his union remedies would not be exhausted until he filed a protest to the union after the publication of the tellers report. The union responded to this first post-election protest by informing the member that his challenge to the nomination procedure had already been decided against him. After the issuance of the tellers report, two months after the election, the member protested once more. The union replied by letter that he had " 'invoked and exhausted the remedies available under the International Constitution many months ago.' " A complaint to the Secretary was filed within one month of receipt of this letter.

The third circuit held that the complaint was not timely filed under section 402(a), reasoning that the statute speaks of a member "who has exhausted the remedies available under the [union's] constitution and bylaws". The union constitution's provision for contesting nominating procedures required that an appeal be instituted not later than forty-five days before an election. There was no post-election recourse for challenging nominations. Despite the Secretary's assertion that Congress had not intended the operation of section 402(a) to interfere with internal union election procedures prior to an election, the court stated that the delay in filing which resulted from the member's second round of appeals "could serve no purpose other than to lengthen unnecessarily the time required to resolve any conflict between union procedure and the federal law." *Id.* at 352.

But *Hodgson,* even if we were to assume that it was correctly decided, does not help the Local here. Neither Local 1205's bylaws nor the International's constitution designate a pre-election procedure, much less an exclusive one, for challenging nominations. Higgins made his first round of

protests under a general procedure available to any member who feels he has been dealt with "unfairly". His second round of protests, which immediately preceded his complaint to the Secretary, invoked the only procedure in the union constitution that relates specifically to elections; and that procedure is available only after an election has been held. Had Higgins not invoked the latter, it might well have been said that he had not exhausted the pertinent "remedies available under the constitution and bylaws" of the union, as section 402 commands must be done. While judicial resolution of union election conflicts should not be needlessly delayed, the statute requires a full scale effort to resolve disputes within the union itself, and permits resort to the statutory remedy only when internal procedures have failed. *See Wirtz v. Local 153, Glass Bottle Blowers, supra,* 389 U.S. at 471–72, 88 S.Ct. 643; *Wirtz v. H. H. Guy Lodge, No. 873, Railroad Trainmen, supra,* 279 F.Supp. at 874. We conclude that the complaint was timely filed within the meaning of section 402(a). It follows that the district court should have decided whether the Local's refusal to accept the nominations was in violation of the LMRDA, and this question is now open for consideration upon remand.

The judgment of the district court dismissing the Secretary's complaint is vacated, and the case remanded to the district court for further proceedings not inconsistent with this opinion. No costs.

*So ordered.*